**Alan S. KRAMER, Petitioner–Appellee,**

v.

**Gaines W. HAMMOND, Respondent–Appellant.**

Nos. 1724, 1885, Dockets 91–7178, 91–7412.

United States Court of Appeals, Second Circuit.

Argued July 9, 1991.

Decided Aug. 19, 1991.

Michael R. Sonberg, New York City (Serchuk & Zelermyer, of counsel), for petitioner-appellee.

Howard S. Veisz, New York City (Kornstein Veisz & Wexler, Richard F. Lubarsky, of counsel), for respondent-appellant.

Before MESKILL, NEWMAN and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Respondent Gaines W. Hammond appeals from a judgment of the United States District Court for the Southern District of New York, Kevin Thomas Duffy, *Judge,* granting petitioner's motion to compel arbitration. Hammond also appeals from the district court's denial of his Fed.R.Civ.P. 60(b) for relief from that judgment. For the reasons that follow, we reverse.

## BACKGROUND

A. *The Facts.*

In 1984 Hammond entered into an agreement with a number of California inventors to license a medical device they had invented. This invention, the lithotripter, was designed to break up kidney stones with sound waves, thereby eliminating the need for surgery. Hammond agreed to raise capital and to lend his expertise to the project.

Petitioner Alan S. Kramer was the attorney for the group of California inventors, and allegedly drafted the agreement under which Hammond and the California inventors agreed to form a corporation named Hammond Technologies, Inc. The parties agreed that Hammond would have the option to license the invention, provided that he could obtain the necessary capitalization by October 22, 1984 (later extended to No-

vember 8, 1984 upon Hammond's payment of an additional $25,000). The parties also entered into an arbitration agreement that bound them to arbitrate "any dispute arising between the parties in which this Agreement or its interpretation is in issue or alleging any breach thereof * * *."

Hammond was not successful in raising the necessary financing within the option period, so the option expired. The parties then signed a new subscription agreement, under which the California investors became active participants in the management of the corporation. Accordingly, both Hammond's responsibilities and ownership rights in the corporation were reduced.

### B.  *Procedural History.*

Dissatisfied with the position in which he then found himself, Hammond filed suit in March of 1986 in South Carolina state court. He alleged that Kramer and others "entered into a conspiracy and an agreement to fool, cheat and manipulate" him in order to "greatly dilute and/or take away" his rights in the corporation. Kramer made a special appearance in the South Carolina action, and moved to dismiss as against him for lack of personal jurisdiction. When this motion was denied, Kramer appealed to the South Carolina Supreme Court, which affirmed the decision of the lower court. Kramer then moved to stay the action pending his application to the United States Supreme Court for a writ of certiorari, but this motion was denied in July of 1990. Kramer then filed an answer, in which for the first time he raised the arbitration clause as an affirmative defense.

In the meantime, in September of 1987 Hammond had commenced an identical suit in the Supreme Court of the State of New York, apparently to protect his rights in the event that the South Carolina court should determine that it lacked personal jurisdiction over Kramer. Kramer served a notice to take Hammond's deposition, and a few days later he answered the complaint. In his answer, Kramer asserted six affirmative defenses, but did not raise the arbitration clause. He also advanced four counterclaims. Shortly thereafter, he moved for summary judgment.

The New York Supreme Court stayed all proceedings, including Kramer's summary judgment motion, pending the outcome of Hammond's action in South Carolina. Kramer appealed the stay order, but the appellate division affirmed. Kramer then moved for leave to appeal to the New York State Court of Appeals; the court of appeals dismissed the motion on June 30, 1989.

Nearly a year and a half later, and after he had finally lost his jurisdictional battle in South Carolina, Kramer, on November 16, 1990, petitioned the district court to compel arbitration. The district court, in a handwritten, one-sentence endorsement, granted this motion on January 22, 1991, stating that there was "an insufficient showing of 'waiver' to rebut the policy favoring arbitration." On February 13, 1991, Hammond filed a notice of appeal, and on March 13, 1991 moved under Fed. R.Civ.P. 60(b) for relief from the judgment. The district court denied this motion for lack of jurisdiction.

Hammond appeals from both the judgment and the 60(b) order. He argues that the arbitration clause upon which Kramer relies has been abrogated, and that in any event, Kramer waived his right to arbitrate. He further argues that the tort claims that form the basis for his action are not within the scope of the arbitration clause. We conclude that Kramer waived his right to arbitration by engaging in extensive pre-trial litigation for over four years, and we therefore remand the case to the district court with a direction to dismiss the petition to compel arbitration. Because we reverse on the waiver issue, we need not consider Hammond's other arguments.

### DISCUSSION

■ There is, of course, a strong presumption in favor of arbitration. "[A]ny doubts concerning the scope of arbitration issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like

defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). In light of this presumption, a waiver of arbitration " 'is not to be lightly inferred.' " *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir.1985) (citation omitted).

▮ Nevertheless, a party does waive this right when he engages in "protracted litigation", *Com–Tech Assoc. v. Computer Assoc.*, 938 F.2d 1574, 1576 (2d Cir.1991), that results in prejudice to the opposing party. "[W]aiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." *Rush*, 779 F.2d at 887. Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense. *See Com–Tech*, 938 F.2d at 1576; *Rush*, 779 F.2d at 887–88.

▮ No bright line defines this second type of prejudice—neither a particular time frame nor dollar amount automatically results in such a finding—but it is instead determined contextually, by examining the extent of the delay, the degree of litigation that has preceded the invocation of arbitration, the resulting burdens and expenses, and the other surrounding circumstances.

In the instant case, over four years passed between the time that Hammond first brought suit and Kramer at last raised the arbitration clause as a bar. During this four-year period, Kramer engaged in extensive pretrial litigation, apparently designed to wear down his opponent. He moved to be dismissed as a party to the South Carolina action for lack of personal jurisdiction. When this motion was denied, Kramer appealed to the South Carolina Supreme Court, and losing there, moved to stay the proceedings pending his application to the United States Supreme Court for a writ of certiorari. Only after that motion was denied did Kramer file an answer in August of 1990, in which he finally raised the arbitration clause as an affirmative defense.

More significantly, in the New York proceeding, begun in September of 1987, Kramer's answer raised six affirmative defenses and four counterclaims; but he did not raise the arbitration clause. He also served a notice to depose Hammond, and filed a summary judgment motion. When the supreme court stayed all proceedings, including Kramer's summary judgment motion, until there was a resolution of the South Carolina case, Kramer appealed the stay to the appellate division and to the New York Court of Appeals.

° Thus, before invoking the arbitration clause, Kramer had litigated issues to the highest state courts of New York and South Carolina, and had petitioned the United States Supreme Court for a writ of certiorari. By engaging in such aggressive, protracted litigation for over a four-year period, Kramer waived his contractual right to arbitration. To allow him to invoke arbitration at this late date would severely prejudice Hammond, who has expended a great deal of time and money in contesting Kramer's motions and appeals. It would also undercut the very rationale—speed and efficiency—that supports the strong presumption in favor of arbitration in the first place. *See Com–Tech*, 938 F.2d at 1577. While judicial economy is not a basis for waiving a demand for arbitration, *see Rush*, 779 F.2d at 888, prejudice is, and Kramer's actions, perhaps best illustrated by his numerous appeals in which he had little likelihood of success, unfairly prejudiced Hammond. Though the resistance to the assertion of personal jurisdiction in South Carolina might not alone have established waiver of arbitration, the extensive litigation in New York, where jurisdiction was not in doubt, substantially augmented the total delay and expense and focused on the merits of the dispute, thereby establishing waiver.

Kramer argues that our decision in *Rush* prevents a finding of waiver. He claims that "*Rush* makes clear that delay and expense alone are insufficient to support a finding of waiver", and that "waiver will be found only in the most egregious situa-

tions, generally where the party seeking arbitration has lost on the merits in a dispositive motion or trial". Kramer's position seems to be that the only prejudice that can overcome the strong presumption in favor of arbitration is substantive prejudice, that is, a ruling on the merits that would have res judicata effect. Any other litigation, however prejudicial to the opposing party, should not, according to Kramer, result in a waiver.

But in *Rush,* we clearly implied that the prejudice required for waiver is not limited to substantive prejudice, but may also be "prejudice in terms of either expense or delay * * *." *Id.* at 888. In deciding that there was not a waiver in that case, we stressed that there was only an eight-month delay before arbitration was invoked, and that the number of non-arbitrable issues more than justified the litigation that preceded the demand for arbitration. *Id.* at 887–88. Likewise, in *Sweater Bee By Banff, Ltd. v. Manhattan Industries, Inc.,* 754 F.2d 457, 461 (2d Cir.), *cert. denied,* 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985), another case in which we rejected a waiver argument, some of the issues involved in that case's pretrial litigation were also not arbitrable. *See Sweater Bee,* 754 F.2d at 463. In both cases, there were sound, nonprejudicial reasons to justify the delays and the additional expenses incurred when the parties did not immediately invoke arbitration. No such reasons exist in this case.

In *Com–Tech,* on the other hand, we held that a party had waived its contractual right to arbitration by engaging in pretrial discovery and making a summary judgment motion in the eighteen months between the time the party answered the complaint and raised its claim of arbitration. *See Com–Tech,* 938 F.2d at 1576–77. In *Com–Tech,* where all of the issues were arbitrable, waiver was applied because "plaintiffs were put to the expense not only of engaging in extensive depositions, but also of defending motions for judgment on the pleadings and partial summary judgment." *Id.* at 1577–78.

Kramer's actions suggest a disingenuousness that the presumption in favor of arbitration was not intended to protect.

He invoked the arbitration clause only after raising a number of substantive issues. He took appeals to the highest courts in two states, and petitioned the United States Supreme Court for a writ of certiorari. Even if not so intended, these maneuvers had the inevitable effect of causing Hammond to expend substantial time and money. Only when Kramer had exhausted his pretrial maneuvers did he finally abandon the litigation playing field and retreat to his contractual right to arbitration. As we have recently held in *Com–Tech,* "[t]o permit litigants to exercise their contractual rights to arbitrate at * * * a late date, after they have deliberately chosen to participate in costly and extended litigation would defeat the purpose of arbitration: that disputes be resolved with dispatch and with a minimum of expense." *Com–Tech,* 938 F.2d at 1578.

## CONCLUSION

The judgment of the district court is reversed, and the case is remanded with a direct to dismiss the petition.