**SOUTHERN SYSTEMS, INC., Plaintiff,**

v.

**TORRID OVEN LIMITED, Defendant.**

No. 99–2089–DV.

United States District Court, W.D. Tennessee, Western Division.

July 25, 2000.

---

Michael I. Less, Ted M. Hayden, Less Getz & Lipman, Memphis, TN, Michele Fosco Salazar, Less Getz & Lipman, Memphis, TN, for Southern Systems, Inc.

Stephen P. Hale, Jennifer Ziegenhorn, Hale Headrick Dewey & Wolf, PLLC, Memphis, TN, for Torrid Oven Limited.

Dianne Vescovo, Memphis, TN, miscellaneous pro se.

Michael I. Less, Ted M. Hayden, Less Getz & Lipman, Memphis, TN, for United States Fidelity and Guaranty Co.

### ORDER ON DEFENDANT'S MOTION TO STAY FOR ARBITRATION

DONALD, District Judge.

In this lawsuit plaintiff Southern Systems Incorporated ("SSI"), a subcontractor of defendant Torrid Oven Limited ("Torrid"), sued Torrid claiming that it was not paid for certain work that it performed on a conveyor system. Torrid counterclaimed asserting that SSI failed to properly perform the work on the conveyor system and that Torrid incurred substantial expense to correct the errors made by SSI. Torrid now seeks an order staying the lawsuit while the parties pursue arbitration.

This case has endured in the district court for nearly eighteen months since the

original complaint was filed by SSI on January 28, 1999. During this year and a half, the parties have engaged in extensive discovery and motion practice. Soon after service of the complaint, Torrid, on May 26, 1999, sought an extension of time to respond. After the district court granted that motion, Torrid filed a motion on June 16, 1999, asking the court to dismiss the lawsuit pursuant to Fed.R.Civ.P. 12(b)(2) for lack of jurisdiction over the person or, in the alternative, to dismiss the case based on the doctrine of forum non conveniens. The motion was denied by the district court on August 2, 1999.

In the interim, a number of depositions were taken by both parties. On May 18 and 19, 1999, SSI took the depositions of four Torrid employees: Jeff Muyshondt, President of Torrid; Craig Corcoran, Vice–President of Operations at Torrid; John Adamse, project manager of Torrid; and Helmut Meir, engineering manager for Torrid. Torrid then took four depositions over the course of two weeks, those of: Larry Linton, Vice–President of SSI; V.L. Patel, project engineer for SSI; Charles Van Pelt, project engineer for SSI; and Leon Linton, President of SSI.

On August 16, 1999, Torrid filed its answer to SSI's complaint. Nowhere in the answer did Torrid assert that the dispute in this litigation was governed by an arbitration clause, nor did Torrid argue at that time that the court should stay proceedings while the parties engaged in arbitration. Torrid then served interrogatories and a request for production of documents

on SSI on October 28, 1999, and answered SSI's discovery requests on October 29, 1999, and December 13, 1999. Additional discovery continued to take place, with SSI taking the depositions of three Torrid employees on January 17–20, 2000, in Ontario, Canada, continuing a deposition of one of the employees on February 15–16, 2000, and taking the depositions of two additional Torrid employees on March 7–9, 2000. Torrid was no stranger to the deposition process, taking six more depositions between May 9, 2000, and May 18, 2000. In the meantime, Torrid filed a counterclaim against SSI on February 22, 2000, and a third party complaint against United States Fidelity & Guaranty Co., SSI's surety, the same day. The present motion for stay of arbitration was not filed until June 16, 2000, less than one month prior to the discovery deadline of July 12, 2000, less than two months before the trial date of August 14, 2000, and nearly fifteen months after the complaint was filed.

## ANALYSIS

The critical issue in this case is whether Torrid by participating in the litigation process has waived its right to arbitration.

■ Torrid seeks a stay of the present proceedings pending arbitration pursuant to an arbitration clause in a written proposal from SSI to Torrid which Torrid contends constitutes part of the contract between SSI and Torrid.[1] Torrid argues that the Federal Arbitration Act ("FAA") governs and requires a stay of underlying litigation until arbitration has been held.[2] Section 3 of the FAA provides:

1. The clause provides:
   Any controversy or claim arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of the American Arbitration Association, and judgment upon the award rendered may be entered in the highest court of the forum, state or federal, having jurisdiction....
   (Def.'s Mem. in Support of Mot. to Stay for Arbitration, Ex. A. ¶ 21.)

2. Neither party to the present motion has briefed the issue of what law governs interpretation of the FAA. In its order of August 2,

1999, the court considered the issue of whether Canadian or Tennessee law governed the contract between the parties, but did not decide the issue. "The issue of arbitrability under the United States Arbitration act is a matter of federal substantive law." *Morewitz v. West of England Ship Owners Mut. Protection and Indem. Ass'n.*, 62 F.3d 1356, 1364 (11th Cir.1995) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)); *see also Miller Brewing Company v. Fort Worth Distrib. Co., Inc.* 781 F.2d 494, 497 n. 4 (5th Cir.1986); *Gavlik Constr. Co. v. H.F. Campbell*

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit or proceeding is pending, upon being satisfied that the issue involved in such suit is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Torrid insists that the language of Section 3 is mandatory and that a court must grant a stay when any party requests it. *See, e.g., In re H & M Charters v. Reed,* 757 F.Supp. 859, 862 (S.D.Ohio 1991) (holding that the FAA does not allow for discretion by a district court, but rather mandates that the court order arbitration upon motion of either party). In response, SSI does not dispute the existence of an arbitration clause or the application of the FAA to the dispute,[3] but contends that Torrid has waived its right to arbitration.

There is a strong federal policy in favor of arbitration. *See generally National Found. for Cancer Research v. A.G. Edwards & Sons, Inc.,* 821 F.2d 772, 774 (D.C.Cir.1987) (citing *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218–24, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)). The strong federal policy is based upon the goal of Congress to enforce terms of a contract rather than a preference for arbitration. *See Dean Witter Reynold's, Inc.,* 470 U.S. 213, 219, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Any doubts concerning arbitration should be resolved in favor of arbitration. *See AT & T Technologies, Inc.,* 475 U.S. at 650, 106 S.Ct. 1415; *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Some courts have held that an order to arbitrate should not be denied unless the contractual arbitration clause clearly does not cover the dispute at issue. *See, e.g., United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *see also AT & T Technologies, Inc. v. Communications Workers of Am. et. al.,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *Pearce v. E.F. Hutton Group, Inc.,* 828 F.2d 826

---

*Co.,* 526 F.2d 777, 784 (3rd Cir.1975). In this order, the court therefore applies federal decisional law for the purpose of determining arbitrability. *See Morewitz,* 62 F.3d at 1364.

**3.** Application of the FAA to a contract requires the satisfaction of four specific criteria. *See, e.g., Episcopal Hous. Corp. v. Federal Ins. Co.,* 269 S.C. 631, 239 S.E.2d 647, 650 (1977). First, there must be a written provision for arbitration in the contract. 9 U.S.C. § 2. There is no disagreement in the present case that a written arbitration clause was provided in the agreement between the parties. Second, the contract in question must pertain to a transaction involving commerce. 9 U.S.C. §§ 1, 2. This case clearly involves the design and manufacture of goods in Tennessee that were then shipped in interstate commerce to Canada for installation and completion. The third element requires that the issue involved in the suit be one that is referable to arbitration under the contract. 9 U.S.C. § 2. The language of the arbitration clause here states that "any controversy or claim" will be referable to arbitration, and accordingly the third

element is met in this case. Finally, the applicant for the stay must not be in default in proceeding with the arbitration. 9 U.S.C. § 3. It is evident that defendant has filed for arbitration and complied with all Arbitration Rules relating to arbitration. To that extent, the fourth element is satisfied. Some courts, however, equate the default requirement of Section 3 with waiver. *See In re H & M Charters, Inc. v. Reed,* 757 F.Supp. 859, 865 ("Yet, in order to determine whether a party has defaulted in proceeding with arbitration, thereby waiving the arbitration agreement, the court must analyze all the facts and circumstances."); *see also Radiator Specialty Co. v. Cannon Mills,* 97 F.2d 318, 319 (4th Cir. 1938) and *Morewitz v. West of England Ship Owners,* 62 F.3d 1356, 1365 n. 16 (11th Cir. 1995) (stating that the term 'default' has been construed as analogous to 'waiver'.) To the extent that waiver is equated with default, whether Torrid is in default is the crucial issue in this case.

(D.C.Cir.1987); *Cash Converters USA, Inc. v. Burns,* No. 99 C 146, 1999 WL 98345, at *6 (N.D.Ill. Feb.19, 1999).

▇▇▇ The federal policy favoring arbitration is not absolute. It is well settled that a party can waive its contractual right to arbitration like any other contractual provision. *See American Locomotive Co. v. Gyro Process Co.,* 185 F.2d 316, 318 (6th Cir.1950) (holding "the contract right of arbitration [can] be waived"); *Morewitz,* 62 F.3d 1356, 1365 (11th Cir.1995) ("Arbitration should not be compelled when the party who seeks to compel arbitration has waived that right."); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1489 (10th Cir.1994) (recognizing that a contractual right to arbitration can be waived like any other contract provision); *Magallanes Inv., Inc. v. Circuit Systems, Inc.,* 994 F.2d 1214, 1217 (7th Cir.1993) ("The right to arbitration also can be waived."); *Kramer v. Hammond,* 943 F.2d 176, 179 (2nd Cir.1991) (finding waiver of right to arbitration where party engages in protracted litigation and prejudice results to the opposing party); *Miller Brewing Co. v. Fort Worth Distributing Co., Inc.,* 781 F.2d 494, 497 (5th Cir.1986) ("The right to arbitration, like any other contract right, can be waived."); *Cornell & Co. v. Barber & Ross Co.,* 360 F.2d 512 (D.C.Cir.1966) (finding waiver where defendant filed motion for transfer of venue, filed counterclaim, took depositions, and procured the production of documents); *Radiator Specialty Co. v. Cannon Mills,* 97 F.2d 318, 319 (4th Cir.1938) ("One having the right to arbitrate and to stay an action at law, pending arbitration under this statute may waive such right.").

Various jurisdictions have adopted different tests to determine waiver of arbitration rights. *See U.S. v. Darwin Constr. Co.,* 750 F.Supp. 536, 538 (D.D.C.1990). A number of circuits regard prejudice as the pivotal factor in determining waiver. *See Rush v. Oppenheimer,* 779 F.2d 885, 887 (2nd Cir.1985) (holding waiver of right to compel arbitration may be found only where prejudice to the other party in dem-

onstrated.); *accord Leadertex v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 26 (2nd Cir.1995); *Sweater Bee v. Manhattan Indus., Inc.,* 754 F.2d 457, 463 (2nd Cir.1985); *Gavlik Construction Co. v. H.F. Campbell Co.,* 526 F.2d 777, 782 (3rd Cir. 1975) (holding that the presence or absence of prejudice to the opposing party, not inconsistency, is determinative of the issue of waiver). *See also Miller Brewing Co. v. Fort Worth Distrib. Co., Inc.,* 781 F.2d 494, 497 (5th Cir.1986) (finding waiver of arbitration right when "the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party."); *accord Walker v. J.C. Bradford & Co.,* 938 F.2d 575, 577 (5th Cir.1991) (citing *Miller,* 781 F.2d at 497); *Stifel, Nicolaus & Co., Inc. v. Freeman,* 924 F.2d 157, 158 (8th Cir. 1991) (adopting same three prong test as the Ninth Circuit); *Fisher v. A.G. Becker Paribas, Inc.,* 791 F.2d 691, 694 (9th Cir. 1986) (adopting a three prong test for determining waiver: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that right; and (3) prejudice to the opposing party resulting from the inconsistent acts); *accord Hoffman Constr. Co. of Oregon v. Active Erectors and Installers, Inc.,* 969 F.2d 796, 798 (9th Cir.1992).

Not all of the circuits hold prejudice to be an indispensable requirement for finding waiver. The D.C. Circuit considers whether the party has acted inconsistently with its arbitration right to the be the controlling factor. *See National Found. for Cancer Research,* 821 F.2d at 777 (holding that inconsistency is the determinative factor and that prejudice is not a necessary element to demonstrate waiver, but merely a relevant factor among others). The Seventh Circuit considers prejudice as a factor but not an essential requirement. *See Cabinetree of Wisconsin Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388, 390 (7th Cir.1995) (holding that prejudice to the opposing party is a factor in the determination of waiver but not a requirement); *accord Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d

1482, 1489 (10th Cir.1994) (listing prejudice as one of six factors to examine in determining whether a party has waived its right to arbitration: "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the ligation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g. taking advantage of judicial procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party.").

Sixth Circuit cases interpreting federal law on the waiver of a right to arbitration do not expressly address the issue of prejudice. In *American Locomotive v. Gyro Process Co.,* 185 F.2d 316 (6th Cir.1950), the Sixth Circuit found American Locomotive had waived its right to arbitrate under the FAA by proceeding with the litigation process without indicating any intention to enforce its rights.[4] The court noted that at the time of the filing of the original complaint, or within a reasonable time thereafter, American Locomotive could have and should have made the decision to either insist upon its contractual right to arbitration or to prepare for trial by jury. *See American Locomotive Co.,* 185 F.2d at 320. In finding waiver, the Sixth Circuit utilized the generally recognized definition of "waiver" as "an intentional relinquish-

ment of [a] known right" and rejected American Locomotive's argument that consideration was necessary to support a waiver. *Id.* at 320. Instead, the Sixth Circuit focused on the inconsistency between American Locomotive's conduct in continuing to prepare for a jury trial and an intent to arbitrate. *See also Germany v. River Terminal Ry. Co.,* 477 F.2d 546, 547 (6th Cir.1973) (recognizing that the right to stay proceedings and compel arbitration may be waived by the actions of a party which is completely inconsistent with any reliance thereon, without discussing prejudice as a factor). Other district courts within the Sixth Circuit have recognized prejudice to be a significant factor in determining waiver of an arbitration right but not an express requirement for finding a waiver. *See In re H & M Charters, Inc. v. Reed,* 757 F.Supp. 859, 865 (S.D.Ohio 1991) ("Prejudice and delay are significant factors the court must consider in applying the default provisions of section 3 of the Federal Arbitration Act."); *J. Wise Smith and Assoc., Inc. v. Nationwide Mut. Ins. Co.,* 925 F.Supp. 528, 531 (W.D.Tenn.1995) (citing *WorldSource Coil Coating, Inc. v. McGraw Constr. Co.,* 946 F.2d 473, 479 n. 7 (6th Cir.1991)) ("Although Illinois law does not require the party seeking to prove waiver show prejudice," the Sixth Circuit noted that "prejudice results when one party invokes the litigation process and then seeks arbitration, thereby causing the other party to incur duplicate expenses.") In light of the Sixth Circuit's emphasis on inconsistent conduct and no mention of prejudice, this court will treat prejudice as a significant factor but not a dispositive one.[5]

4. Torrid argues in its reply brief that *American Locomotive* is distinguishable from the present lawsuit in that the litigation in *American Locomotive* occurred over a seven-year period, whereas the present lawsuit has been pending for only a year and a half. However, given the Sixth Circuit's discussion of the need for parties to exercise their right to arbitration at the time of the filing of a complaint "or within a reasonable time thereafter," the court does not view American Locomotive as inapposite to the present case.

5. Because prejudice is not a determinative factor, Torrid's reliance on cases in its reply memorandum in which prejudice was the controlling factor is misplaced. If prejudice were a dispositive factor in establishing waiver under Sixth Circuit law, however, the result would not be different as prejudice would clearly result in this case if the court were to grant Torrid's motion for a stay. See discussion *infra* at pages 855–56. There is no bright line to determine prejudice. The circuits even differ on their definition of prejudice. "Prejudice can be substantive, such as

■ Waiver of the right to insist on arbitration may occur in several ways. Conduct such as filing responsive pleadings while not asserting a right to arbitration, filing a counterclaim, filing pretrial motions, engaging in extensive discovery, use of discovery methods unavailable in arbitration, and litigation of issues on the merit have all been considered by courts to amount to a waiver of the right to arbitration. *See, e.g., National Found. for Cancer Research*, 821 F.2d at 778 (finding that the movant's delay in seeking arbitration, its extensive participation in discovery, its motion for summary judgment, and the resulting prejudice to the opposing party constituted waiver); *U.S. v. Darwin Constr. Co.*, 750 F.Supp. 536, 538–539 (D.D.C.1990) (finding plaintiff's conduct in filing eight motions with the court, conducting extensive discovery, and filing motion to stay two months before trial date inconsistent with intent to enforce arbitration right). There is no rigid rule as to what constitutes waiver of the right to arbitrate; the issue must be decided based on the circumstances of each particular case. *See St. Mary's Med. Ctr. v. Disco Aluminum Prod. Co., Inc.*, 969 F.2d 585, 588 (7th Cir.1992); *Stifel*, 924 F.2d at 159. Among factors examined by the courts in determining whether there has been a waiver of the right to arbitrate are: (1) whether the party's actions are inconsistent with the right to arbitrate; (2) the degree of pretrial litigation; (3) the length of delay in invoking an arbitration right and seeking a stay; (4) the proximity to the trial date; (5) whether a defendant seeking arbitration filed a counterclaim without asking for a stay; and (5) the resulting prejudice to the opposing party. *See Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir.1995); *Metz*, 39 F.3d at 1488.

■ No one factor is dispositive. *See National Found. for Cancer Research*, 821 F.2d at 774. The "essential question [in determining waiver] is whether, under the totality of *circumstances*, the defaulting party has acted inconsistently with the arbitration right." *Id.* (emphasis added).

■ The totality of Torrid's conduct strongly supports a finding that Torrid has waived its right to insist upon arbitration, and that submission of the dispute to arbitration now would prejudice plaintiff. Here, SSI focuses on four particular actions of Torrid as being inconsistent with Torrid's intent to arbitrate: (1) filing an answer and counterclaim without invoking the arbitration clause; (2) engaging in extensive pretrial discovery by taking ten depositions (the maximum allowed under the Rules) and propounding interrogatories and document requests; (3) delaying its invocation of the arbitration clause for eighteen months from the time the complaint was filed and seeking a stay one month before the discovery deadline and two months before trial; and (4) filing and actively pursuing a motion to dismiss and/or change of venue.

In analyzing Illinois law, the Sixth Circuit held that one method by which defendants could waive a right to arbitration was by submitting arbitrable issues to a court. *See WorldSource Coil Coating, Inc. v. McGraw Constr. Co., Inc.*, 946 F.2d 473, 478 (6th Cir.1991). The court noted that "unless authorized by contract, submission of arbitrable issues in a judicial proceeding constitutes a waiver of the right to compel arbitration regardless of the prejudice to the other party." *Id.* at 479. In *WorldSource*, McGraw had filed suit in state court seeking injunctive relief and damages which he eventually nonsuited before any ruling by the court, and then sought to proceed with arbitration. The court found the claim for damages to amount to a

---

when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitra-tion, and thereby causes his adversary to incur unnecessary delay or expense." *Kramer v. Hammond*, 943 F.2d 176, 179 (2nd Cir. 1991) (citing *Com–Tech Assoc. v. Computer Assoc.*, 938 F.2d 1574, 1576 (2d Cir.1991)).

submission of arbitrable issues in a judicial proceeding.

Other courts have similarly held that the filing of a responsive pleading without insisting on arbitration may establish waiver. *See Central Trust Co. v. Anemostat Products Div.*, 621 F.Supp. 44, 46 (S.D.Ohio 1985); *see also Leadertex, Inc. v. Morganton*, 67·F.3d at 26 (finding assertion of affirmative defenses without raising right to arbitration is inconsistent with arbitration right); *Kramer v. Hammond*, 943 F.2d 176, 178 (finding waiver when party answered and filed counterclaims but did not raise the arbitration issue, pursued discovery, and litigated jurisdictional issue extensively).

In *Central Trust*, the court held that the filing of an action by plaintiff serves as notice to a defendant that the plaintiff is refusing arbitration and within a reasonable time defendant must determine whether to proceed to trial or insist upon its right to arbitrate. *Id.* The *Central Trust* case stood ready for trial, discovery was complete, and the final pre-trial conference had been held. The court held that substantial participation in litigation by the defendant, if followed by a grant of a stay, would result in prejudice to the opposing party by "unduly delaying adjudication of its claim and exposing it to expenses and discovery not available in the arbitration proceedings." *Id.*

At least three courts have held that delays of eight months or more before demanding arbitration are inconsistent with an arbitration right. *See S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1513 (11th Cir.1990) (delay of eight months from the time of filing of complaint); *Miller Brewing Company v. Fort Worth Distributing, Co., Inc.* 781 F.2d 494, 497 (5th Cir.1986) (plaintiff waited eight months after filing suit in state court to demand arbitration); *Leadertex, Inc.*, 67 F.3d at 26 (finding waiver

when party filed an answer without raising its arbitration right, engaged in pretrial discovery, and delayed invoking arbitration for eight months resulting in economic harm to the opposing party's business). Torrid's delay of fifteen months in demanding arbitration is highly significant when one considers that the Civil Case Management Plan in this district requires that a case be disposed of by settlement or trial within eighteen months of filing.

Other courts have held that a combination of factors such as those present in this case will lead to a finding of waiver. *See S & H Contractors, Inc.*, 906 F.2d at 1513 (holding plaintiff acted inconsistently with its arbitration rights to the prejudice of defendant and thus waived its right when it waited eight months after the filing of the complaint before demanding arbitration and in the meantime took five depositions and filed two motions—a motion to dismiss and a discovery motion.) In *J. Wise Smith & Assoc. v. Nationwide Mut. Ins. Co.*, 925 F.Supp. 528, 531 (W.D.Tenn. 1995), the district court held that where defendant sought an insurance appraisal only after plaintiff filed suit, filed an answer, attended a scheduling conference, made disclosures pursuant to Fed.R.Civ.P. 26, and filed the motion to compel appraisal after the close of discovery and five weeks before the trial date, defendant had waived its right to an appraisal and plaintiff would suffer prejudice if the motion were granted.[6]

Similarly, in the present case, Torrid filed its motion for stay less than a month before the discovery deadline (which the court extended on May 11, 2000), less than two months prior to the start of trial, and after both parties had made their Rule 26 disclosures and engaged in extensive pretrial discovery. Even now, while this motion to stay is pending, Torrid persists in invoking the assistance of the court in

---

**6.** Although Torrid complains that *Smith* is inapplicable here because it involved an issue of appraisal rather than arbitration, the district court in *Smith* explicitly held that the same law and analysis applies to appraisal clauses and arbitration clauses. *Id.* at 531 n. 8.

compelling discovery from SSI, an action clearly inconsistent with an intent to arbitrate. Moreover, the discovery obtained in this litigation process would not have been available in arbitration.[7] Torrid sought the assistance of the court in its motion to dismiss and in filing a counterclaim, yet never raised the issue of arbitration prior to June 2000. To now force SSI to expend additional sums to pursue arbitration, with Torrid having the benefit of eighteen months of pretrial proceedings in this court, would clearly result in substantial prejudice to plaintiff. While filing a motion to dismiss or filing a counterclaim, standing alone, may be insufficient grounds to establish waiver, these discrete events, when taken in combination with the other factors discussed above, lead to the inexorable conclusion that defendant intended to relinquish its right to insist upon arbitration. In short, defendant's approach to the conduct of this litigation "is so inconsistent with the right to ... arbitration ... as to constitute a waiver of that right." *Smith*, 925 F.Supp. at 532.

In a last ditch effort to obtain arbitration, Torrid argues that it did not unduly delay seeking arbitration because its right to arbitrate was not known until May 10, 2000, one month before the filing of its motion to stay, when Larry Linton, SSI's corporate representative, confirmed at his deposition that he believed Proposal No. P–96–124–R3 which contained the arbitration clause in question comprised the contract. Torrid's excuse for delay—that it was ignorant of the right to arbitration until one month before it filed the motion to stay—is disingenuous at best. *See Leadertex*, 67 F.3d at 26. Torrid first received the document in question, SSI Proposal No. P–96–124–R3, shortly after it was mailed on January 28, 1997. Torrid

received another copy of the proposal during discovery in response to its request for "all documents which comprise the contract, including revisions and amendments thereto, between Torrid and SSI for work on the project." (*See* Def.'s Reply to Resp. to Mot. to Stay at 2.) Thus, Torrid had actual notice of the existence of an arbitration clause for over three years before the present motion was filed and further had notice that the proposal was a document that comprised the contract when it was produced during discovery.

## CONCLUSION

For the above reasons, Torrid's motion for a stay of the current proceedings pending arbitration is denied.

IT IS SO ORDERED.

---

**7.** Though not fully briefed by the parties, it appears that the American Arbitration Association rules would only allow limited discovery at best. *See* AAA R–10 ("Consistent with the expedited nature of arbitration, the arbitrator may direct (i) the production of documents and other information, and (ii) the identification of any witnesses to be called. At least two (2) business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing. The arbitrator is authorized to resolve any disputes concerning the exchange of information. There shall be no other discovery, except as indicated herein or as ordered by the arbitrator in extraordinary cases when the demands of justice require it.")