SYSTRAN FINANCIAL SERVICES
CORP. Plaintiff

v.

GIANT CEMENT HOLDING,
INC., et al., Defendants

In Re: Metropolitan Environmental,
Inc., Debtor

No. 3:02CV7449.

United States District Court,
N.D. Ohio,
Western Division.

March 3, 2003.

Jack R. Pigman, Porter, Wright, Morris & Arthur, Columbus, OH, for Systran Financial Services Corp, Plaintiff.

H. Buswell Roberts, Jr., Shumaker, Loop & Kendrick, Toledo, OH, Paul D. Harrill, McNair Law Firm, P.A., Columbia, SC, Anne M. Frayne, Dayton, OH, Michael Bragg, Fifth Third Center, Toledo, OH, for Giant Cement Holding, Inc., Metropolitan Environmental, Inc., Giant Resource Recovery, Inc., M and M Chemical and Equipment Co., Keystone Cement Co., Oldover Corp, Omni Southeast Chemical Inc., Bruce Comly French, Defendants.

## ORDER

CARR, District Judge.

This is an adversary proceeding in which defendant Giant Cement Holding, Inc. ("Giant") seeks an order, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, to stay and compel arbitration

of the claims by plaintiff Systran Financial Services Corporation ("Systran").This court has jurisdiction pursuant to 28 U.S.C. § 1334(b). For the following reasons the defendant's motion to compel arbitration shall be granted.

### BACKGROUND

On or about August 28, 1998, plaintiff Systran entered into a factoring agreement with Metropolitan Environmental, Inc. ("Metropolitan"), whereby Metropolitan sold and assigned its accounts receivable to plaintiff in exchange for plaintiff's financing of Metropolitan's operations.

On September 1, 1998, Metropolitan signed a transportation services agreement with defendant Giant. Defendant transferred equipment that it leased or owned to Metropolitan. In exchange, Metropolitan provided exclusive transportation services to Giant. Included in this agreement was an addendum that provided that the parties agreed to submit "[a]ny claim or controversy arising out of or relating to [the] Transportation Services Agreement" to "final and binding arbitration." Pl.'s Ex. 3.

Prior to execution of the Metropolitan/Giant transportation agreement, Systran notified Giant that all of Metropolitan's accounts had been sold and assigned to Systran, and, as a result, all payments due to Metropolitan from Giant should be made to Systran.

On September 17, 2001, Metropolitan filed for protection under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio.

At the time of the filing, Giant refused to make payments on the accounts sold and assigned by Metropolitan to Systran. Giant argues that it has not paid Metropolitan or Systran for outstanding invoices because Metropolitan breached the transportation services agreement by failing to make lease payments and failing to complete services for which Giant had made advanced payments. According to Giant, it therefore has valid rights of recoupment and setoff in amounts which exceed the total amount of the outstanding invoices from Metropolitan.

On November 13, 2001, Systran filed a complaint in the bankruptcy court to recover the payments due under Giant's account with Metropolitan. In January, 2002, Giant filed an answer to Systran's complaint and a cross-claim against Metropolitan. Metropolitan subsequently cross-claimed against Giant. On January 25, 2002, Giant filed a motion to dismiss Metropolitan's cross-claim. In its answer to plaintiff's complaint and its motion to dismiss Metropolitan's cross-claims, Giant did not assert its right to arbitration.

In March, 2002, the bankruptcy court, finding that Systran's claim would have no effect on the bankruptcy proceeding, ordered the parties to submit briefs as to where the bankruptcy court should remand litigation of Systran's claim. Giant asserted that the litigation should be remanded for arbitration pursuant to the Metropolitan/Giant transportation services agreement. The bankruptcy court rejected Giant's assertion and, in August, 2002, ordered reference to this court. In September, 2002—ten months after Systran filed its complaint in the bankruptcy court—Giant filed the present motion to compel arbitration.

### DISCUSSION

Through the FAA, Congress has declared a national policy favoring arbitration. *See Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926, 932 (6th Cir.1998) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)). Accordingly, "the [FAA] establishes that, as a matter of Federal law, any doubts

concerning the scope of arbitrable issues should be resolved in favor of arbitration ...." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Notwithstanding this policy, "arbitration is a matter of contract and a party cannot be required to submit to arbitration [in] any dispute which he has not agreed so to submit." *AT & T Techs. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

Systran has three main arguments in opposition to Giant's motion to compel arbitration. First, Systran claims that it is not bound by the Metropolitan/Giant contract terms because its rights arise under a factoring agreement, not by the assignment of or as a party to the Metropolitan/Giant contract. Second, Systran argues Giant, having delayed making a demand for arbitration, waived its right to do so. Third, Systran argues that it would be inequitable to compel arbitration.

## I. Systran, as Assignee, is Bound by the Metropolitan/Giant Agreement to Arbitrate

Because it is not a party to the Metropolitan/Giant arbitration agreement, Systran argues that it cannot be required to submit its claims to arbitration. According to Systran, it did not receive an assignment of the transportation services agreement. Rather, Systran argues that under its factoring agreement with Metropolitan, it only received the right to payment of Metropolitan's accounts.

Because Systran only received an assignment of the right to collect Metropolitan's accounts receivables, Systran argues that it received a finance assignment,[1] as defined by the Uniform Commercial Code ("UCC").[2] Systran argues that the UCC distinguishes between finance assignments and contract assignments. UCC § 2–210(4) states that under a finance assignment, only the assignor's rights are transferred. Therefore, unlike traditional contract assignment principles, the finance assignee is not substituted in for the assignor. Systran therefore argues that, as a finance assignee, it is not bound by any of the terms in the contract between Metropolitan and Giant.

Systran rightly points out that the Ohio Revised Code adoption of the UCC distinguishes between finance assignments and general contract assignments. Revised Code § 1302.13(D) (UCC § 2–210(4)) provides:

> An assignment of "the contract" or of "all my rights under the contract" or an assignment in similar general terms is an assignment of rights and unless the

---

1. In its Opposition, Systran originally argues it is a finance assignee. In its Surreply, however, plaintiff states that it is not a "traditional" finance assignee. Systran has not explained the difference between the two.

2. Under general choice of law rules, issues in contract are determined by the law chosen by the parties unless the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice. Restatement (Second) Conflict of Laws § 187. The Metropolitan/Giant transportation agreement states that South Carolina law governs the contract. The Metropolitan/Systran factoring agree-

ment provides that Oregon law governs the contract. The parties have not addressed which state's law is controlling in this case. Instead, parties cite to the UCC. Local law governs if the party seeking the application of foreign law does not demonstrate a conflict. *Andersons, Inc. v. Consol, Inc.*, 185 F.Supp.2d 833, 836 (N.D.Ohio 2001). I will therefore cite to the Ohio Revised Code's adoption of the UCC. Ultimately, it will not matter because Ohio, Oregon, and South Carolina have adopted verbatim the relevant portions of the UCC cited herein. *See e.g.*, O.R.C. §§ 1302.13(D), 1309.404; S.C.Code Ann. §§ 36–2–210(4), 36–9–404; and O.R.S. §§ 72.2100(5), 74.0404.

language or the circumstances (as in an assignment for security) indicate the contrary, it is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise by him to perform those duties. This promise is enforceable by either the assignor or the other party to the original contract.

Official comment 5 to UCC § 2–210 provides:

Subsection (4) lays down a general rule of construction distinguishing between a normal commercial assignment, which substitutes the assignee for the assignor both as to rights and duties, and a financing assignment in which only the assignor's rights are transferred.

Thus, Article 2 of the UCC recognizes that general assignments confer both the assignor's rights and obligations to the assignee whereas a finance assignment confers only the assignor's rights.

Article 9 of the UCC, however, provides otherwise. Revised Code § 1309.404 (UCC 9–404) states:

(a) Unless an account debtor has made an enforceable agreement not to assert defenses or claims, and subject to subsections (b) through (e), the rights of an assignee are subject to:

(1) all terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract; and

■ As the official comments to UCC § 9–404 [3] explain, if the transaction is governed by Article 9, "an assignee generally takes an assignment subject to defenses and claims of an account debtor." UCC § 9–404 cmt. 2. Therefore, the assignee secured creditor stands in the shoes of the assignor debtor. See White & Summers, Uniform Commercial Code §§ 34–6 (5th ed.); *see also Nat'l City Bank NW v. Columbian Mutual Life Ins. Co.*, 282 F.3d 407, 409 (6th Cir.2002) ("[UCC § 9–404] clearly limits the rights of National City, as the assignee, to those of the assignor . . . and makes its right to accounts receivable subject to the provisions of [account debtor's] contract with [the assignor], including [account debtor's] right of recoupment.") (citations omitted).

The question in this case therefore becomes whether Systran's factoring agreement [4] with Metropolitan is governed by Article 9.

Ohio Rev.Code § 1309.109(A)(3) (UCC § 9–102(1)(b)) provides that Article 9 applies to "any sale of accounts or chattel paper." As explained by the official comments to UCC § 9–102, "sales of accounts, contract rights and chattel paper are brought within this Article to avoid difficult problems of distinguishing between transactions intended for security and those not so intended." UCC § 9–102 cmt. 2. The comments also provide:

An assignment of accounts, contract rights or chattel paper as security for an obligation is covered by subsection (1)(a). Commercial financing on the basis of accounts, contract rights and chattel paper is often so conducted that the

---

**3.** Article 9 was revised in 2000. The pre-revised § 9–318 has now been renumbered § 9–404.

**4.** As defined in American Jurisprudence 2d: "factoring" in modern commercial practice is understood to refer to the purchase of accounts receivable from a business by a "factor" who thereby assumes the risk of loss in

return for some agreed discount. Indeed, the factor has emerged primarily as a financier, often a finance company or similar institution, which provides its clients (usually manufacturers or other suppliers of goods) with needed working capital and other financial assistance by purchasing their accounts receivable

32 Am.Jur.2d 6 (1995)

distinction between a security transfer and a sale is blurred, and a sale of such property is therefore covered by Section 9–103 or Section 9–104.

*Id.*

■ The factoring agreement between Systran and Metropolitan is a sale of accounts governed by Article 9. The contract specifically states: "Customer agrees to present on a monthly basis, a Minimum Anticipated Volume of Bills for Systran to purchase which shall be equal to $500,000.00." Pl.'s Ex. 1. "Bills" is defined as "any right to payment for services rendered or goods sold by Customer to a Debtor ...." *Id.* The agreement further provides:

> In addition to the ownership of The Bill(s) purchased by Systran, to secure payment and performance of Customer's Obligations to Systran, Customer grants Systran a security interest in all Customer's present and future Bill(s) and Special Purchase Bill(s), accounts, deposit accounts, chattel paper, contract rights, general intangibles, instruments, and documents, and the proceeds of the (the "Collateral").

*Id.*

Because Article 9 governs, O.R.C. § 1309.404 specifies what rights or defenses the account debtor—Giant—has against Systran.

In interpreting UCC § 9–404, courts have held that arbitration is a contractual remedy, not an obligation, and therefore it can be raised against a finance assignee by the account debtor. *See e.g., GMAC Commer. Credit LLC v. Springs Inds.,* 171 F.Supp.2d 209, 214 (S.D.N.Y.2001) ("[A]ssignment cannot alter a contract's bargained-for remedial measures, for then the assignment would change the very nature of the rights assigned."); *Banque De Paris et des Pays–Bas v. Amoco Oil,* 573 F.Supp. 1464, 1469 (S.D.N.Y.1983) (finding that "an assignee or other party whose rights are premised on a contract is bound by the remedial provisions bargained for between the original parties to the contract"); *Cone Constructors, Inc. v. Drummond Community Bank,* 754 So.2d 779 (Fla.App.2000) (applying UCC § 9–318).

As the court in *GMAC* concluded, "the adoption of the Article 9 of the UCC means that a finance assignee suing on an assigned contract is bound by that contract's arbitration clause unless it secured a waiver from the signatory seeking to arbitrate." 171 F.Supp.2d at 214 (citing *Banque De Paris,* 573 F.Supp. at 1470–71).

The court in *Oxford Commer. Funding, LLC, v. Cargill Inc.,* 2002 WL 31455989, at *3 (N.D.Ill.2002), likewise held:

> In cases addressing the assignment of accounts receivables, courts have held that the assignee "stands in the shoes of the assignor" and is "subject to contract defenses or claims of the account debtor arising by virtue of the terms of the contract out of which the receivable was created." *James Talcott, Inc. v. H. Corenzwit and Co.,* 76 N.J. 305, 387 A.2d 350, 353 (1978). See also *First Nat'l Bank of Louisville v. Master Auto Serv. Corp.,* 693 F.2d 308, 309 (4th Cir.1982) (assignee takes "the assignment subject to all legal and equitable defenses [the account debtor] could have asserted against [the assignor]"); ... *West Des Moines State Bank v. Brunswick Corp.,* 483 N.W.2d 338, 343 (Iowa App.1992) ("an assignee takes its interest subject to defenses ... of the account debtor against the assignor").

As a matter of policy, the court in *GMAC* also concluded that it is appropriate for the arbitration clause to apply to finance assignees. It reasoned: "[a]s lenders, factors have bargaining power over borrowers. If they are adverse to arbitration, factors can contract with their borrowers to prevent them from entering

trade agreements with arbitration clauses." 171 F.Supp.2d at 218.

I agree with the conclusions of these courts. When an Article 9 assignee asserts collection rights against an account debtor, the account debtor may respond with a defense or claim provided by O.R.C. § 1309.404. Regardless of the fact that Systran was only assigned the right to payment under the transportation services agreement, Giant may properly assert the arbitration agreement as a defense because arbitration was a "term[ ] of the agreement between the account debtor and assignor." O.R.C. § 1309.404.

An arbitration provision would be of no value "if a party could escape the effect of such clause by assigning a claim subject to arbitration between the original parties to a third party." *Pays–Bas,* 573 F.Supp. at 1470 (citations omitted). If Systran did not want to arbitrate disputes over collections from account debtors, it could have contracted with Metropolitan to prevent it from entering into any agreement that contained arbitration clauses. Because it did not do so, it is bound by the arbitration clause.

## II. Waiver

■ A party may waive any of its contractual rights, including the right to arbitration. *See Germany v. The River Terminal Ry. Co.,* 477 F.2d 546, 547 (6th Cir.1973). The general rule is that the right to arbitration is waived "when the party actively participates in litigation or acts inconsistently with its rights to proceed with arbitration." *Uwaydah v. Van Wert County Hosp.,* 246 F.Supp.2d 808, 810 (N.D.Ohio 2002) (citing *Siam Feather & Forest Prods. Co. v. Midwest Feather*

Co., 503 F.Supp. 239, 242 (S.D.Ohio 1980) *aff'd,* 663 F.2d 1073 (1981) (table) (citing *American Locomotive Co. v. Gyro Process Co.,* 185 F.2d 316, 318 (6th Cir.1950))).[5]

While there is no bright-line rule as to what constitutes waiver, "[c]onduct such as filing responsive pleadings while not asserting a right to arbitration, filing a counterclaim, filing pretrial motions, engaging in extensive discovery, use of discovery methods unavailable in arbitration, and litigation of issues on the merits have all been considered by courts to amount to a waiver of the right to arbitration." *Southern Sys., Inc. v. Torrid Oven Ltd.,* 105 F.Supp.2d 848, 852 (W.D.Tenn.2000). Other factors include: 1) the length of delay in invoking an arbitration right and seeking a stay; 2) the proximity to the trial date; and 3) the resulting prejudice to the opposing party. *See id.* at 854.

No one factor is dispositive. As the court in *Carcich v. Rederi, A/B Nordie,* 389 F.2d 692, 696 (2d Cir.1968) explained:

> [as] an abstract exercise in logic it may appear that it is inconsistent for a party to participate in a lawsuit for breach of a contract, and later to ask the court to stay that litigation pending arbitration. Yet the law is clear that such participation, *standing alone,* does not constitute waiver.

The "essential question is whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right." *Id.* (citing *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.* 821 F.2d 772, 774 (D.C.Cir.1987)).

Systran argues that by 1) filing an answer and cross-claim against Metropolitan,

---

**5.** Neither party has briefed the issue of what law governs. "The issue of arbitrability under the United States Arbitration act is a matter of federal substantive law." *Morewitz v. West of England Ship Owners Mut. Protection and Indem. Ass'n.,* 62 F.3d 1356, 1364

(11th Cir.1995) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 402, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). In this order, I therefore apply federal decisional law for the purpose of determining arbitrability. *See Morewitz,* 62 F.3d at 1364.

2) filing the motion to dismiss Metropolitan's cross-claims, 3) stipulating to an order extending the time to which to respond to Systran's amended complaint, 4) filing an answer to Systran's complaint, and 5) filing a response to Metropolitan's motion for a violation of the automatic stay,[6] defendant acted inconsistently with its right to arbitrate and actively participated in the litigation process for ten months. Additionally, Systran argues that if it is required to arbitrate, it will be prejudiced by the substantial attorney fees it will incur arbitrating this dispute in South Carolina.

In *Southern Systems*, the court found waiver of the right where the party seeking arbitration: 1) filed an answer and counterclaim without invoking the arbitration clause; 2) engaged in extensive pretrial discovery, including depositions, interrogatories, and document requests; 3) delayed invocation of the arbitration clause for eighteen months from the time the complaint was filed and two months before the trial date; and 4) filed and actively pursued a motion to dismiss and/or change of venue. 105 F.Supp.2d at 854.

> The court concluded:
> While filing a motion to dismiss or filing a counterclaim, standing alone, may be insufficient grounds to establish waiver, these discrete events, when taken in combination with the other factors discussed above, lead to the inexorable conclusion that defendant intended to relinquish its right to insist upon arbitration. In short, defendant's approach to the conduct of this litigation "is so inconsistent with the right to . . . arbitration . . . as to constitute waiver of that right."

*Id.* at 856 (citations omitted).

In *Siam Feather*, the court found the right had not been waived. According to the court, the participation of the party seeking arbitration had been minimal since the filing of the complaint. The party seeking arbitration filed a notice to take depositions, a motion for a protective order to stay discovery, and then, after a month and a half, filed a motion compelling arbitration. The court concluded:

> In view of the case law which has deemed even greater participation in litigation than we have here to be insufficient to constitute waiver of a right to arbitrate, the Court finds no support for the contention that [defendant] has waived its right to arbitrate. For example, a party may file an answer to a complaint or even file an answer and a counterclaim without waiving its right to arbitration.

503 F.Supp. at 242–43 (citations omitted).

Likewise, in *Mantaline Corp. v. PPG Inds., Inc.*, 225 F.3d 659 (6th Cir.2000), the court concluded that the defendant did not waive its right to arbitration. The defendant filed a counterclaim and participated in discovery. In a separate but related proceeding, the defendant issued a non-party subpoena for the plaintiff's records and requested permission to file a third-party complaint against plaintiff.

The Sixth Circuit concluded: "We do not believe that a party's attempt to defend its right to arbitrate can be used to show waiver." *Id.* 2000 WL 799337 at *4. (citing *H & M Charters, Inc. v. Reed*, 757 F.Supp. 859, 865 (S.D.Ohio 1991)) ("[W]aiver may not be inferred from the fact that a party does not rely exclusively on the arbitration provisions of the contract, but attempts to meet all issues raised in litigation between it and another party to the agreement.") (quoting *Germany v. River*

---

6. During the bankruptcy proceedings, Metropolitan filed a motion for violation of the automatic stay against Giant. In response, Giant filed a memorandum arguing recoupment and set-off. Giant did not assert a right to arbitration.

*Terminal Ry. Co.,* 477 F.2d 546, 547 (6th Cir.1973)).

In this case, Systran argues defendant filed its motion to compel arbitration ten months after Systran initiated this suit in bankruptcy court. Giant requested the bankruptcy court in March, 2002—four months after plaintiff's complaint—to send the case to arbitration; defendant moved this court for arbitration only a month after the case was remanded here. There has been no discovery and litigation has not been extensive. It is true that Giant filed an answer, cross-claim, and a motion to dismiss another cross-claim, but as other courts have concluded, "a party may file an answer to a complaint or even file an answer and a counterclaim without waiving its right to arbitration." *Siam Feather,* 503 F.Supp. at 243.

The facts in this case are similar to those in *Dassero v. Edwards,* 190 F.Supp.2d 544 (W.D.N.Y.2002), where the court concluded the right to arbitration had not been waived.

Defendant filed his motion to arbitrate about four and one-half months after he was served with the summons and complaint, which, while not immediate, is not an unduly lengthy period of time, either. Although defendant did file a motion to dismiss, there has not yet occurred a substantial amount of litigation in this case, and there has been no discovery. In addition, although plaintiff's counsel was required to respond to the motion to dismiss, I believe that, in light of the strong presumption against a waiver of the right to arbitrate, this relatively modest delay and expenditure of effort does not justify finding a waiver to have occurred.

*Id.* at 550.

■ Considering the situation of the parties, the nature of the transaction, and the facts of this case, I conclude that it is reasonable for this case to go to arbitra-

tion. There has been no discovery or extensive litigation. Most importantly, however, Systran has not shown sufficient prejudice. *See e.g., Mantaline,* 2000 WL 799337 at *4 ("Prejudice to the opposing party is a significant factor in this determination."). As the court concluded in *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 26 (2d Cir.1995) ("[P]retrial expense and delay—unfortunately inherent in litigation—without more, do not constitute prejudice sufficient to support a finding of waiver.").

■ As the second circuit concluded: "waiver of the right to arbitration is not to be lightly inferred." *Coca–Cola Bottling Co. of New York, Inc. v. Soft Drink and Brewery Workers Union Local 812,* 242 F.3d 52, 57 (2d Cir.2001) (quoting *Cotton v. Slone,* 4 F.3d 176, 179 (2d Cir.1993) (internal quotes omitted)). Thus, the party seeking to prove waiver has a heavy burden. *Ohio–Sealy Mattress Mfg. Co. v. Kaplan,* 712 F.2d 270, 273 (7th Cir.1983). In view of the national policy favoring arbitration, I find that Systran has not met this burden. Giant, therefore, did not waive its right to arbitrate.

### III. Equitable Considerations

Systran argues that it would be inequitable to force it into arbitration agreement because it had no notice of the Metropolitan/Giant arbitration agreement. According to Systran, Giant first learned that Metropolitan's accounts were assigned to Systran in August, 1998. Therefore, Systran argues, Giant knew that any dispute regarding payment of accounts would ultimately be a dispute with Systran. Giant, however, failed to provide Systran with any notice of the arbitration agreement.

■ There is no merit, however, to Systran's claim that its ignorance of the arbitration agreement makes its enforcement inequitable. Moreover, a person ar-

guing for equity must seek it with clean hands. *See e.g., In re Akron–Cleveland Auto Rental, Inc.*, 921 F.2d 659, 664 (6th Cir.1990). Systran drafted the factoring agreement between itself and Metropolitan. The agreement gave Systran the authority to buy Metropolitan's accounts in its discretion. If Systran opposed arbitration, it could have refused to purchase Giant's accounts from Metropolitan or prevented Metropolitan from entering into contracts with arbitration clauses.

Plaintiff's argument on equitable grounds is therefore not well-taken.

## CONCLUSION

It is therefore,

**ORDERED THAT**

Defendant's motion to stay and compel arbitration be, and hereby is, granted.

**So ordered.**