UNITED STATES of America, For the
Use and Benefit of DMI,
INC., Plaintiff,

v.

DARWIN CONSTRUCTION COMPANY,
Joan B. Robinson, and Lester J.
Robinson, Defendants.

Civ. A. No. 88–3196 SSH.

United States District Court,
District of Columbia.

Oct. 12, 1990.

Christopher M. Kerns, Washington, D.C., for plaintiff.

Joel L. Rubinstein, Robert J. Sciaroni, Washington, D.C., for defendants.

## MEMORANDUM ORDER

STANLEY S. HARRIS, District Judge.

This action is before the Court on plaintiff's motion to stay proceedings pending arbitration, and on defendants' motion for summary judgment. For the reasons set forth below, plaintiff's motion to stay is denied. Defendants' motion for summary judgment is denied in part and granted in part.

### Background

This case arises under the Miller Act. 40 U.S.C. § 270a et seq. That Act requires that before any contract for construction of any public United States building is award-

ed, a performance bond and a payment bond shall be furnished to the United States, and that those bonds shall become binding upon the award of the contract.[1] Defendants Joan and Lester Robinson are the principals shareholders of defendant Darwin Construction Company (Darwin), a Maryland company. Darwin contracted with the United States government in September 1987 to renovate the South Building of the United States Department of Agriculture in Washington, D.C. Darwin provided a payment bond, as required by the Miller Act, but plaintiff challenges the validity of that bond.

In November 1987, Darwin subcontracted with DMI, a Maryland company, to perform demolition and disposal of a concrete deck. The price of the subcontract was $78,000. DMI completed what it considered to be its full responsibilities under the agreement before signing and returning the formal written contract to Darwin. DMI and defendants disagree about what the subcontracting agreement originally included.

At the start of the project, DMI had to revise its demolition plans in response to new restrictions placed on equipment use. As a result, DMI incurred costs well beyond its original expectations. It submitted several change order estimates to Darwin to be presented to the government for approval, each totalling around $75,000. According to DMI, Darwin represented that if DMI would break down its change order claims into two parts, one for demolition and the other for disposal, the government would more readily agree to the proposals. Darwin also allegedly represented that it would timely negotiate in good faith with the government to coordinate those claims. DMI accordingly split its change order claims as directed, one claim totalling $41,660 and the other totalling $34,680. Darwin subsequently settled with the government for $40,136 in total change order costs. It never conferred with DMI on this settlement, nor did it communicate the settlement to DMI.

1. The provision applies only to contracts exceeding $25,000.

In August of 1988, Darwin had paid DMI $45,000 on the base contract price and had paid nothing for the change orders. DMI alleges that it repeatedly attempted to collect the remainder of the contract price, but without success. In mid-August 1988, a DMI agent (Sutton) entered Darwin's offices to collect the $33,000 remaining on the contract price of $78,000. Defendant Lester Robinson informed Sutton that he was unable to furnish a check at that time, but asked that he sign a release forgiving all of Darwin's obligations to DMI for extras beyond the base contract price. Sutton refused to sign the release, and left without a check.

Sutton returned to Robinson's office on August 16, 1988, to collect payment. Robinson claims he offered Sutton a check for $28,000 on the condition that it satisfied all remaining debts to DMI, including contract price and change orders. Sutton obtained possession of the check and left the premises without signing the release Robinson had prepared. DMI denies that the $28,000 check settled its claim against Darwin.

The United States brought this action on behalf of DMI, pursuant to the Miller Act, to recover money allegedly still owed by Darwin. Plaintiff charges defendants with breach of contract, default on the payment bond, coercion, and fraud. After extensive discovery and pretrial activity, plaintiff now moves to stay proceedings pending arbitration. Defendants oppose such a stay and move for summary judgment as to all of plaintiff's claims.

### Stay Pending Arbitration

Plaintiff moves to stay the case pending arbitration, relying on an arbitration clause in the original contract between Darwin and DMI. Defendants argue that plaintiff can no longer enforce the arbitration clause because DMI has substantially invoked the litigation machinery, thereby waiving any right to arbitration. The Court agrees with defendants, and therefore denies plaintiff's motion to stay.

According to the Federal Arbitration Act, a party to a written arbitration agreement contained in a contract involving interstate commerce may obtain a stay of a suit "providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Various jurisdictions have adopted conflicting standards for determining what amounts to waiver of an arbitration right.[2] However, the court in *National Foundation for Cancer Research v. A.G. Edwards & Sons* clearly laid out the rule in this Circuit: "The right to arbitrate, like any contract right, can be waived.... The essential question is whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right." 821 F.2d 772, 774 (D.C.Cir.1987) (citing *Cornell and Co. v. Barber and Ross Co.*, 360 F.2d 512, 513 (D.C.Cir.1966)). The court further stated that "one example of conduct inconsistent with the right to arbitrate is active participation in a lawsuit." *Nat'l Foundation for Cancer Research*, 821 F.2d at 775.

In the present case, plaintiff actively participated in this lawsuit for two full months before seeking to invoke the arbitration clause. It filed eight motions in this Court, requesting preliminary relief and attempting to manipulate discovery boundaries. It argued a motion for a preliminary injunction and filed a motion to compel discovery. Both parties had conducted fairly extensive discovery, and the discovery deadline had passed. Plaintiff had moved to change the trial date. The revised trial date was only two months away when plaintiff filed the motion to stay. These actions are inconsistent with an intent to enforce an arbitration right. They, in conjunction with the fact that

---

**2.** *See Nat'l Found. for Cancer Research v. Edwards & Sons*, 821 F.2d 772 (D.C.Cir.1987) (inconsistency, not prejudice, determines waiver of right to arbitration); *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754 (9th Cir.1989) (party seeking to prove waiver of right to arbitration must demonstrate (1) knowledge of existing right to compel arbitration, (2) acts inconsistent with that right, and (3) prejudice to the party opposing arbitration); *Sentry Eng'g and Constr. v. Mariners Cay Dev. Corp.*, 287 S.C. 346, 338 S.E.2d 631, 634 (1985) (presence or absence of prejudice, not inconsistency, determines waiver of right to arbitration).

plaintiff initiated the present action in this Court, show plaintiff's clear intent to litigate in this Court.

The Court need not find any prejudice to defendants in order to find a waiver of an arbitration right. The court in *National Foundation for Cancer Research* explicitly found that while prejudice to the opposing party may be a relevant factor in determining whether the movant acted inconsistently with the right to arbitrate, it is not an essential element in showing waiver. *Nat'l Found. for Cancer Research*, 821 F.2d at 777. Nevertheless, the Court finds that allowing a stay of proceedings pending arbitration would prejudice defendants to a degree. When plaintiff filed the motion to stay, defendants had answered the complaint and begun discovery, demonstrating their own intent to pursue litigation in this Court rather than arbitration. They could no longer enforce the arbitration provision because they had acted inconsistently with an intent to arbitrate. *Cornell*, 360 F.2d at 513. Because defendants committed to resolution of the dispute in this Court, and accordingly prepared for a trial here, they would be prejudiced by compelled arbitration. This prejudice further indicates the inconsistency of plaintiff's actions with an intent to arbitrate.

This case is distinguishable from *Davis Corp. v. Interior Steel Equipment Co.*, in which a subcontractor did not waive his right to arbitration by filing an action in federal court to protect against the statute of limitations, or by participating in minimal discovery. *Davis Corp.*, 669 F.Supp. 32 (D.D.C.1987). The *Davis* court specifically distinguished its facts from those in *National Foundation for Cancer Research*, stating that the subcontractor "*consistently* maintained that the dispute should be submitted to arbitration." *Davis Corp.*, 669 F.Supp. at 33 (emphasis in original). In the present record, that simply is not the case. The plaintiff first mentioned arbitration after filing numerous motions with the Court, conducting discovery, and setting trial dates.

Therefore, because plaintiff has acted inconsistently with a right to arbitrate, plaintiff has waived the right to arbitration. Accordingly, the motion to stay pending arbitration is denied. The next issue before the Court is defendants' motion for summary judgment.

## Choice of Law

■ The Court first must decide what law applies to plaintiff's substantive claims. Although the parties do not address this issue in their briefs, each alternately cites Maryland, District of Columbia, and Virginia law, thus indirectly raising the choice of law issue. The District of Columbia has long adhered to a "governmental interests analysis" approach to choice of law. *Stutsman v. Kaiser Health Found.*, 546 A.2d 367 (D.C.1988). This principle requires the Court to decide "which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review." *Id.* at 373. In this case, all parties are Maryland residents or Maryland corporations. The contract concerns a project in the District of Columbia, but that project has been substantially completed. Because the issues in the case concern the payment terms of the contract, the District of Columbia's interest in proper construction of its buildings and property is relatively insubstantial. Its policies on breach of contract and fraud do not further its interests in this case. On the other hand, Maryland's interest in enforcing contract agreements between its own citizens is comparatively strong, as is its interest in protecting its own citizens from fraud. Therefore, because Maryland has a stronger interest in the application of its laws to this case than does the District of Columbia, the Court applies Maryland law to the substantive issues.

## Breach of Contract and Bond Claims

Defendants argue that an accord and satisfaction occurred when DMI accepted the "settlement" check. Accordingly, they contend that the Court should grant defendants' motion for summary judgment as to plaintiff's breach of contract and bond claims because defendants have no further obligations to DMI. The Court finds that

issues of material fact remain concerning whether a valid accord and satisfaction occurred.

■ The Maryland Court of Appeals has used the definition of accord and satisfaction provided in *Corpus Juris Secundum:*

Accord and satisfaction is a method of discharging a contract or cause of action, whereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other, and perform such agreement, the 'accord' being the agreement, and the 'satisfaction' its execution or performance.

*Jacobs v. Atlantco Ltd. Partnership,* 36 Md.App. 335, 373 A.2d 1255, 1258 (1977) (citing C.J.S. *Accord & Satisfaction,* § 1 (1936 & Supp.1976)). Such an agreement, like any contract, is enforceable only if supported by consideration. *Auto Trade Ass'n of Maryland v. Harold Folk Enterprises, Inc.,* 484 A.2d 612, 624 (Md.1985). Thus, if a creditor's claim is for a liquidated or undisputed sum, and the debtor offers a lesser sum in full settlement of the claim, no accord and satisfaction occurs, because no additional consideration supports the agreement. However, if a creditor's claim is for an unliquidated or disputed sum, the debtor's promise not to press the disputed claim may act as consideration in return for relinquishment of the remainder of the debt. *Air Power, Inc. v. Omega Equipment Corp.,* 54 Md.App. 534, 459 A.2d 1120 (1983). In order for the debtor's abstention to be adequate consideration, it must involve forgoing a claim which is asserted in good faith. Thus, if defendants can successfully argue that their debts to plaintiff were disputed in good faith, their promise not to press the dispute to determine a fixed price may constitute adequate consideration to support an accord and satisfaction. However, material issues of fact remain as to whether defendants can make such a good faith argument.

■ The base contract price for DMI's work was $78,000. In August 1988, Darwin had paid $45,000 to DMI, leaving a remaining balance of $33,000. Darwin claims that, when DMI refused to remove a weather-proofing membrane, it legitimately discounted the original contract price by $20,000. Therefore, Darwin claims that the remaining balance on the base contract price was $13,000 rather than $33,000. However, a question of fact remains as to whether Darwin can make such a claim in good faith, as required to establish an unliquidated claim. It is unclear whether removal of the weather-proofing membrane was included in the original agreement. It is also unclear whether Darwin made DMI aware of its intent to discount the base contract price, or whether $20,000 appropriately reflected the cost of removal. Therefore, a material issue of fact exists concerning whether the balance remaining on the base contract was an unliquidated sum. If it was a liquidated sum of $33,000, DMI's acceptance of $28,000 does not constitute accord and satisfaction, but rather partial payment of a known debt.

In addition, Darwin received $40,136 from the government for extra costs claimed by DMI. That sum was based on change orders DMI submitted to Darwin when a change in demolition procedures became necessary. Of the $40,136 defendants claimed and received from the government, Darwin had set aside $34,750 for DMI. DMI never received those funds. Therefore, because Darwin received money from the government to cover DMI's costs, it is unclear whether defendants can make a good faith argument that they did not owe DMI the $34,750 originally set aside for it.

Thus, a factual dispute exists as to whether $54,750—the $20,000 deducted from the base contract price plus the $34,750 set aside for change order costs—is a liquidated sum owed DMI. A resolution of disputed facts is necessary to determine whether the $28,000 settlement check was partial payment towards a calculable sum or was accord and satisfaction. Therefore, summary judgment is denied as to defendants' breach of contract and bond claims.

### Coercion

■ Plaintiff's third claim, that of coercion or economic duress, also depends on

resolution of a factual dispute, and therefore summary judgment is improper as to this claim. Under Maryland law, duress consists of a wrongful act or threat that precludes the complaining party from exercising his free will or judgment. *Meredith v. Talbot County*, 560 A.2d 599, 603 (Md. 1989). Further, in the case of economic duress, the defendant must also be responsible for complainant's circumstances. *Shillman v. Hobstetter*, 241 A.2d 570, 578 (Md.1968). In the present case, defendant allegedly wrongfully withheld money due DMI until it believed DMI's debt left it no choice but to accept a settlement. However, as discussed above, it is unclear whether a settlement actually occurred. In addition, questions of fact remain as to whether Darwin committed wrongful acts or threats by withholding DMI's payment. Because these issues of fact remain, summary judgment is denied as to the duress claim.

### Fraud

■ Plaintiff's fraud claim does not survive defendants' motion for summary judgment. Plaintiff first argues that defendants committed statutory fraud pursuant to Md.Real Prop.Code Ann. §§ 9–201 to 204, by withholding funds they received in trust from the government. However, as the court pointed out in *United States v. Federal Insurance Company:*

> The Maryland Construction Trust Statute, Md.Real Prop.Code Ann. §§ 9–201 to –204 (1988 & Supp.1989), applies only to state-financed buildings and to those subject to the Maryland mechanics' lien statute. *See id.* § 9–204. Of course, federal construction projects such as this are not subject to the Maryland mechanics' lien statute, which is why the Miller Act was enacted in the first place.

729 F.Supp. 477, 478 (D.Md.1990). Because the contract in this case involved a federal construction project, and was not funded by the state of Maryland, plaintiff cannot successfully set forth a claim of statutory fraud under this section.

■ Alternatively, plaintiff claims that defendants committed fraud under Maryland common law by misrepresenting to DMI the manner in which they would negotiate with the government for change order costs, and by secretly settling DMI's claims with the government at substantially less than cost. The court in *Call Carl, Inc. v. BP Oil Corp.*, 554 F.2d 623, 629 (4th Cir. 1977), laid out the five elements which constitute fraud in Maryland:

> (1) a representation made by a party was false; (2) its falsity was either known to the party or made with such reckless indifference to the truth to impute knowledge; (3) the misrepresentation was made for the purpose of defrauding some other person; (4) that person reasonably acted in reliance upon the misrepresentation with full belief in its truth, and he would not have done the thing from which damage resulted had it not been made; and (5) the person so acting suffered damage directly resulting from the misrepresentation. *See James v. Goldberg*, 256 Md. 520, 261 A.2d 753, 758 (1970).

Plaintiff's argument fails the first criterion, which requires a false representation. Plaintiff claims that defendants made a false representation by failing to submit DMI's claims as represented. However, a fraud action can only be predicated on misrepresentation of past or existing fact; breach of future promises lies in the realm of contract. *See Call Carl*, 554 F.2d at 631 (citing *Blondes v. Hayes*, 29 Md.App. 663, 350 A.2d 163, 168 (1976); *Schwartzbeck v. Loving Chevrolet, Inc.*, 27 Md.App. 139, 339 A.2d 700 (1975)). Therefore, Darwin's alleged breach of a promise to negotiate in a certain manner at a future date cannot constitute fraud.

Had Darwin falsely stated its existing intentions when it made the purported statements, it would have misrepresented a present fact, and therefore potentially committed fraud. *See Call Carl*, 554 F.2d at 631. However, plaintiff alleges nothing with respect to defendants' intent when they spoke of their future action. Therefore, because plaintiff challenges defendants' representations of future actions, plaintiff fails to satisfy the first fraud criterion.

In addition, plaintiff fails to meet the fourth criterion for a claim of fraud. There is no evidence to suggest that DMI acted in reliance on Darwin's alleged misrepresentations. DMI had no right to present its claims directly to the government. It could not have acted to promote its change order proposals, regardless of how Darwin negotiated its claims. Therefore, it did not act in reliance on defendants' promise to negotiate in good faith. Thus, because plaintiff does not successfully allege misrepresentation or reliance, its fraud argument fails. Summary judgment is granted as to this claim.

Accordingly, for the reasons set forth above, it hereby is

ORDERED, that plaintiff's motion to stay pending arbitration is denied. It hereby further is

ORDERED, that plaintiff's unopposed motion for leave to file out of time a response to defendants' motion for summary judgment is granted nunc pro tunc. It hereby further is

ORDERED, that defendants' motion for summary judgment is granted as to the fraud claim and denied as to all other claims.

SO ORDERED.