IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 15, 2020

## KENNETH K. ALTOM, JR., ET AL. v. CAPITAL RESORTS GROUP, LLC ET AL.

**Appeal from the Chancery Court for Knox County**
**No. 196568-1        John F. Weaver, Chancellor**

_____

### No. E2019-00739-COA-R3-CV

_____

This is an appeal from an order denying the defendants' motions seeking to compel the parties to participate in mandatory arbitration. The trial court denied the motions to compel arbitration with respect to "the issue of the unconscionability of the precise agreement to arbitrate or delegation to arbitration" and "the issue of cancellation of the purchase agreements," finding that such issues presented questions for the court rather than an arbitrator. The trial court also determined that the defendants had not waived their right to arbitration. The defendants timely appealed. Discerning no reversible error, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which RICHARD H. DINKINS and KENNY W. ARMSTRONG, JJ., joined.

Jared S. Garceau, Knoxville, Tennessee, for the appellants, Capital Resorts Group, LLC, and CRG Development, LLC.

John O. Belcher, Nashville, Tennessee, for the appellees, Kenneth K. Altom, Jr., and Pamela M. Altom.

## OPINION

### I. Factual and Procedural History

On August 29, 2018, the plaintiffs, Kenneth K. Altom, Jr., and Pamela M. Altom, filed a complaint in the Knox County Chancery Court ("trial court") against Capital Resorts Group, LLC ("Capital"); Grand Crowne Resorts of Pigeon Forge, LLC; CRG

Development, LLC ("CRG"); Angela M. Braud; John E. Smart; Zachary E. Yoakum; and Richard Rodriguez (collectively, "Defendants"). In their complaint, Mr. and Mrs. Altom stated that they were seventy and seventy-one years of age, respectively, and that they had owned a timeshare at the Beach House Resort in Myrtle Beach, South Carolina, since approximately 1983. The Altoms related that they had used their timeshare for family vacations for many years without incident.

According to the complaint, Capital acquired or became affiliated with the Beach House Resort in recent years, and in December 2017, solicited the Altoms to attend an informational meeting in Knoxville concerning "exciting things that were happening with the Beach House Resort." The Altoms, along with approximately four other couples, attended the meeting, which was held at the Crowne Plaza Hotel in Knoxville on January 11, 2018. The Altoms averred that the meeting quickly devolved into an "aggressive, high-pressure sales pitch" designed to sell timeshare interests. The Altoms stated that by the time of the meeting, they were no longer able to travel and utilize their timeshare due to serious health problems.

The Altoms alleged that Ms. Braud, Mr. Smart, and other Capital representatives told the Altoms that their existing deed for a timeshare ownership interest at the Beach House Resort had become null and void and that the Altoms would have to trade it for "points" and purchase additional points. The Altoms were also purportedly told that they had to make the decision to do so at that meeting or would be responsible for maintenance fees and other costs that could be "'tens' or 'hundreds' of thousands of dollars." The Altoms further alleged that the meeting began in the early evening and lasted until nearly midnight, during which time they were subjected to numerous high-pressure sales tactics. According to the Altoms, Ms. Braud and Mr. Smart represented that the Altoms' estates could be charged with significant financial loss after they died. The Altoms eventually signed documents, for which they claimed to have received no explanation and which they did not understand, so that they would be permitted to leave. The Altoms averred that by the time of their departure nearly five hours after their arrival, they were physically and mentally exhausted.

The Altoms additionally alleged that although they received some copies of documents that evening, the documents they were provided were incomplete and confusing. Although the Altoms subsequently requested from Capital a complete set of documents that they had executed on that evening, they were unsure whether they ever received copies of all of the documents that they signed. The Altoms later demanded that Capital rescind the entire transaction and filed a complaint with the Tennessee Department of Commerce and Insurance. Capital, however, refused to rescind the transaction.

In their complaint, the Altoms stated that the documents they signed appeared to include the following:

(1)     an agreement to purchase a "Member Beneficiary Interest/Club Membership/Points/Vacation Interest" for the price of $350 ("First Contract"),

(2)     a warranty deed conveying their prior ownership interest in Beach House Resort to CRG,

(3)     another agreement to purchase a "Member Beneficiary Interest/Club Membership/Points/Vacation Interest" for the price of $12,795 ("Second Contract").

Accordingly, the Altoms asserted that they had been induced to execute documents relinquishing their deeded ownership interest at Beach House Resort and agreeing to pay in excess of $13,000 for use of a timeshare or membership in a vacation club. The Altoms also alleged that they were intentionally preyed upon by the Defendants due to their age and vulnerability. The Altoms further averred that Defendants had violated the Tennessee Timeshare Act, the Tennessee Consumer Protection Act, and the Tennessee Adult Protection Act; that Defendants had made fraudulent and/or negligent representations that induced the Altoms to sign the documents; and that Defendants had engaged in a civil conspiracy. The Altoms also asserted that the respective documents were unconscionable and that they had signed them under duress.[1] The Altoms sought to rescind the transactions (except for the warranty deed) and claimed entitlement to recover compensatory, punitive, and treble damages, as well as attorney's fees and prejudgment interest.

On October 4, 2018, Capital and CRG ("the Capital Defendants") filed a motion to dismiss the Altoms' claims and to compel mediation and arbitration pursuant to the terms of the contracts signed by the Altoms. The Capital Defendants averred that the Altoms' contracts contained mandatory arbitration clauses, which provided that the Altoms would participate in at least three hours of mediation in Florida before filing a lawsuit concerning disagreements arising from the contracts. The Capital Defendants also asserted that the contracts provided that any complaint initiated by a party who did not first participate in mediation would be subject to immediate dismissal and that the filing party would be responsible to pay the other party's attorney's fees. They maintained that the contracts further provided that if an agreement was not reached in mediation, the parties would then submit to binding arbitration.

On November 27, 2018, the Altoms filed an amended complaint, adding CRG Acquisitions, LLC, as a party defendant. The Altoms also averred that "the arbitration

---

[1] The Altoms also alleged that Mr. Rodriguez had violated the Tennessee Real Estate Broker Licensing Act.

provisions at issue in this case do not apply to claims of fraudulent inducement; do not expressly delegate issues regarding arbitrability to the arbitrator; and are not sufficiently clear to be enforceable." The Altoms further averred that the arbitration provisions, specifically, were unconscionable.

On December 6, 2018, Mr. Rodriguez filed a motion to dismiss and to compel mediation and arbitration concerning the Altoms' claims. Mr. Rodriguez adopted the arguments set forth in the similar motion filed by the Capital Defendants.

On December 10, 2018, the Altoms filed a response to the motion to dismiss and to compel mediation and arbitration filed by the Capital Defendants. The Altoms argued that the motion should be denied because "the contracts in this case were fraudulently induced, and the arbitration provisions at issue do not expressly delegate issues of fraudulent inducement and arbitrability to the arbitrator, thereby reserving those issues for the Court to decide." The Altoms further argued that the arbitration provisions were unconscionable, also an issue for the trial court's determination. Finally, the Altoms claimed that Defendants had waived their right to enforce the arbitration provisions. The Altoms concomitantly filed a response to Mr. Rodriguez's similar motion to dismiss, arguing that Mr. Rodriguez was not a party to the contracts at issue and therefore could not rely upon the contracts' provisions. Also on December 10, 2018, the Capital Defendants filed a motion seeking a protective order barring discovery until the trial court ruled on the motions to dismiss.

On March 29, 2019, the trial court entered a memorandum opinion concerning the pending motions. The court determined, *inter alia*, that although the issue of whether the contracts and arbitration provisions contained therein were unconscionable was a question for the arbitrator to decide, the validity of the arbitration delegation provision, or how matters are delegated to the arbitrator, was a question for the court to decide. The court also determined that questions regarding the Altoms' right to cancel or rescind the contracts was an issue to be determined by the trial court as well. The trial court directed that the parties could conduct discovery as to these issues and that a subsequent hearing would be held. The court stated that it would enter an order incorporating the memorandum opinion by reference. The Capital Defendants filed a notice of appeal on April 26, 2019, regarding the March 29, 2019 memorandum opinion.

Following receipt of a letter from the trial court clerk indicating that the March 29, 2019 memorandum opinion was not a final order, this Court entered an order determining that the issue of whether the notice of appeal was premature would be deferred until after the record was received by this Court. The order also provided that to the extent the March 29, 2019 memorandum opinion denied the Capital Defendants' motion to compel arbitration, it was immediately appealable as of right pursuant to Tennessee Code Annotated § 29-5-319.

On June 27, 2019, this Court entered an order, *sua sponte*, directing the trial court clerk to transmit an order memorializing the decision contained in the March 29, 2019 memorandum opinion on or before July 15, 2019. On July 9, 2019, the trial court entered an order, which incorporated the March 29, 2019 memorandum opinion and denied the motions to compel arbitration with respect to "the issue of the unconscionability of the precise agreement to arbitrate or delegation to arbitration" and "the issue of cancellation of the purchase agreements," directing that such issues would be set for further hearing before the trial court. The trial court also determined that the Capital Defendants had not waived their right to enforce the arbitration provisions. The July 9, 2019 order was subsequently transmitted to this Court as a supplement to the record.

## II. Issues Presented

The Capital Defendants present the following issues for this Court's review, which we have restated slightly as follows:

1.      Whether the trial court erred by denying the Capital Defendants' motion to dismiss and compel arbitration with respect to the issue of unconscionability of the arbitration delegation provision.

2.      Whether the trial court erred by denying the Capital Defendants' motion to dismiss and compel arbitration with respect to the issue of cancellation of the agreements between the parties.

The Altoms present the following additional issues, which we have also restated slightly:

3.      Whether the trial court erred by determining that the Capital Defendants had not waived their right to compel arbitration.

4.      Whether this Court lacks jurisdiction on appeal because the trial court had not made a final determination as to the issue of arbitration.

## III. Standard of Review

A trial court's decision concerning enforcement of an arbitration clause is reviewed *de novo* by this Court. *Rosenberg v. BlueCross BlueShield of Tenn., Inc.*, 219 S.W.3d 892, 903 (Tenn. Ct. App. 2006) ("A trial court's order on a motion to compel arbitration addresses itself primarily to the application of contract law. We review such an order with no presumption of correctness on appeal."). Moreover, this Court has previously explained:

Although parties cannot be forced to arbitrate claims that they did not agree to arbitrate, *Frizzell Constr. Co., Inc. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 84 (Tenn. 1999), "[a]rbitration is judicially and legislatively favored in Tennessee." *Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 490 S.W.3d 800, 808 (Tenn. Ct. App. 2015) (citation omitted).

*Blue Water Bay at Ctr. Hill, LLC v. Hasty*, No. M2016-02382-COA-R3-CV, 2017 WL 5665410, at *5 (Tenn. Ct. App. Nov. 27, 2017).

## IV.  Jurisdiction

As a threshold matter, we first address the Altoms' contention that this Court lacks jurisdiction to consider this appeal because the trial court had not yet made a final determination regarding the issue of arbitration.  The Altoms posit that because the trial court in its July 9, 2019 order allowed the parties to take discovery concerning the issues of (1) cancellation of the contracts and (2) unconscionability of the contracts' respective arbitration delegation provisions and ruled that these issues would be set for further hearing and ultimate determination by the trial court, the July 9, 2019 order was not a final, appealable order.  We disagree.

Tennessee Code Annotated § 29-5-319 (2012) provides that an appeal may be taken from an "order denying an application to compel arbitration."  In this matter, the trial court stated in its July 9, 2019 order that it was denying the Capital Defendants' motion to compel arbitration concerning the issues of cancellation of the contracts and unconscionability of the arbitration delegation provisions.  Rather than ordering the parties to participate in arbitration concerning these two issues, the trial court concluded that these issues were appropriate for the trial court's determination rather than an arbitrator's.  The trial court accordingly ordered that the parties could engage in limited discovery concerning these issues and that a future hearing would be set for ultimate determination of the issues.

Despite the fact that the trial court allowed the parties to engage in discovery before the court's eventual hearing, there is no question that the court denied the Capital Defendants' motion to compel the parties to participate in arbitration concerning these two issues.  By declining to compel arbitration and ruling that the issues would be decided by the court rather than an arbitrator, the trial court's July 9, 2019 order clearly constituted an order "denying an application to compel arbitration" as contemplated by Tennessee Code Annotated § 29-5-319.  Such order is therefore appealable to this Court. *See Erwin v. Moon Products, Inc.*, No. M2002-00877-COA-R9-CV, 2003 WL 21797584, at *2 (Tenn. Ct. App. Aug. 5, 2003) ("[T]he proper avenue for appeal [of an order denying an application to compel arbitration] is an appeal as of right under Rule 3 of the Tennessee Rules of Appellate Procedure.").

V. Unconscionability of Arbitration Delegation Provisions

The Capital Defendants contend that the trial court erred by denying the motions to compel arbitration with respect to the issue of unconscionability of the arbitration delegation provisions because such an issue is for the arbitrator. The Capital Defendants assert that because the Altoms failed to specifically challenge the arbitration delegation provisions, the trial court should have ordered the parties to arbitrate this issue. In support of their argument, the Capital Defendants rely on the United States Supreme Court's decision in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010).

In *Rent-A-Center*, the Supreme Court explained as follows concerning arbitration agreements in general:

> The [Federal Arbitration Act] reflects the fundamental principle that arbitration is a matter of contract. Section 2, the "primary substantive provision of the Act," *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983), provides:
>
> > "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.
>
> The [Federal Arbitration Act] thereby places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms. Like other contracts, however, they may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S. Ct. 1652, 134 L.Ed.2d 902 (1996).

*Id*. at 67-68 (other internal citations omitted).

The Supreme Court further explained that there can exist two types of challenges to the validity of an arbitration agreement pursuant to section 2 of the Federal Arbitration Act ("FAA"):

> "One type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's

provisions renders the whole contract invalid."

*Id*. at 70 (quoting *Buckeye Check Cashing, Inc., v. Cardegna*, 546 U.S. 440, 444 (2006)). The Court further explained that "only the first type of challenge is relevant to a court's determination [of] whether the arbitration agreement at issue is enforceable." *Id*. at 70. As such, a party's "challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id*.

As the High Court also elucidated in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967), "the federal court is instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue.'" "If a party challenges the validity under § 2 [of the FAA] of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement." *Rent-A-Center*, 561 U.S. at 71. *See Taylor v. Butler*, 142 S.W.3d 277, 283-84 (Tenn. 2004) ("Generally, whether a valid agreement to arbitrate exists between the parties is to be determined by the courts, and if a complaint specifically challenges the arbitration clause on grounds such as fraud or unconscionability, the court is permitted to determine its validity before submitting the remainder of the dispute to arbitration."); *Gibbs v. Capital Resorts Grp., LLC*, No. E2019-00295-COA-R3-CV, 2020 WL 886138, at *7 (Tenn. Ct. App. Feb. 24, 2020) ("Because a party must consent to the arbitration agreement, including the delegation provision, the court must resolve the disagreement if a party contests the formation of the arbitration agreement and the delegation provision.").

In the case at bar, the contracts contain the following relevant provisions:

34. Governing Law, Venue, and Jurisdiction. This Agreement shall be construed in accordance with the laws of the State of Florida; excepting, however, the provisions relating to the Purchaser's right to cancel this Agreement and the escrow of Purchaser deposit payments made prior to closing, which provisions shall be construed, interpreted and enforced in accordance with laws of the state where Purchaser executes this Agreement.

\* \* \*

38. Mandatory Arbitration. In the event of any bona fide dispute, claim, question, or disagreement arising from or relating to this Agreement in any manner or the breach thereof, the parties hereto shall use their best efforts to amicably settle the dispute, claim, question or disagreement. To this effect, and prior to filing a lawsuit or lodging any complaint with a governmental or non-governmental agency or other third party, the parties shall participate in at least (3) hours of mandatory mediation in Clearwater,

FL, or such other location as may be mutually agreed upon by the parties, before a mediator mutually agreed upon by the parties, during which they shall consult and negotiate with each other in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution reasonably satisfactory to both parties. Each party shall bear its own costs, except that the costs of the mediator shall be split equally between the parties. Any complaints or litigation initiated by a party hereto without first participating in mandatory mediation shall be subject to immediate withdrawal and/or dismissal and the party initiating same shall be responsible to pay all attorney costs, fees and expenses of the other party in obtaining such withdrawal and/or dismissal. If the parties do not reach a mutually agreeable solution to the dispute at mediation, then, upon notice by either party to the other, all disputes, claims, questions or differences shall be finally settled by binding arbitration administered by the American Arbitration Association ("AAA") in accordance with its commercial arbitration rules, including the optional rules for emergency measures of protection, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Disputes under this clause shall be resolved by arbitration in accordance with Title 9 of the US Code (United States Arbitration Act) and the Commercial Arbitration Rules of the American Arbitration Association. In addition to the foregoing, PURCHASER EXPRESSLY WAIVES ANY RIGHT OR AUTHORITY TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM OR ACTION, INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS. Arbitrators shall be appointed as provided in the AAA Commercial Arbitration Rules. The arbitration shall be conducted in Atlanta, Georgia. Face-to-face proceedings should be conducted at a location which is reasonably convenient to both parties with due consideration of their ability to travel and other pertinent circumstances. If the parties are unable to agree on a location, the determination should be made by the arbitrator(s). The arbitrator(s) may grant any remedy or relief that the arbitrator(s) deems just and equitable within the scope of this Agreement. The arbitrator(s) will have no authority to award punitive or other damages not measured by the prevailing party's actual damages, except as may be required by statute. Each party shall bear its own costs and expenses and an equal share of the arbitrators' and administrative fees of arbitration. Except as may be required by law, neither a party nor an arbitrator may disclose the existence, content or results of any arbitration hereunder without the prior written consent of both parties. Within thirty (30) days of receipt of any award (which shall not be binding if an appeal is taken), any party may notify the AAA of an intention to appeal to a second arbitral tribunal, constituted in the same

manner as the initial tribunal.  The appeal tribunal shall be entitled to adopt the initial award as its own, modify the initial award or substitute its own award for the initial award.   The appeal tribunal shall not modify or replace the initial award except for manifest disregard of law or facts.  The award of the appeal tribunal shall be final and binding, and judgment may be entered by a court having jurisdiction thereof.

The Altoms, via their amended complaint, challenged the contracts as a whole by alleging, *inter alia*, that they were fraudulently induced into signing the contracts, in addition to specifically challenging the validity of the arbitration provisions.   The Altoms asserted that "the **arbitration provisions** at issue in this case do not apply to claims of fraudulent inducement; do not expressly delegate issues regarding arbitrability to the arbitrator; and are not sufficiently clear to be enforceable."  The Altoms also asserted that the arbitration provisions are unconscionable because, *inter alia*, the terms are oppressive, one-sided, and offered the Altoms no reasonable choice.

As the Capital Defendants point out, parties can agree to arbitrate "gateway" questions concerning arbitrability by the use of a delegation clause.  *See Rent-A-Center*, 561 U.S. at 69 ("The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement.").   The Capital Defendants argue that inasmuch as the contracts contain a clause stating that "[d]isputes under this clause [the mandatory arbitration clause] shall be resolved by arbitration in accordance with Title 9 of the US Code (United States Arbitration Act) and the Commercial Arbitration Rules of the American Arbitration Association," such language constitutes a delegation clause that requires an arbitrator to determine the validity and enforceability of the arbitration agreement rather than the court.  The Capital Defendants also argue that the Altoms have failed to specifically challenge the arbitration delegation clause and, as a result, that the trial court erred by denying the Capital Defendants' motion to compel arbitration.  *See id*. at 72 ("[U]nless [the party] challenged the delegation provision specifically, we must treat it as valid under § 2 [of the FAA] and must enforce it under §§ 3 and 4 [of the FAA], leaving any challenge to the validity of the [arbitration] Agreement as a whole for the arbitrator.").

This Court has previously addressed the precise arbitration clause at issue herein in *Gibbs v. Capital Resorts Grp., LLC*, 2020 WL 886138, at *6, and the *Gibbs* opinion is therefore helpful to our analysis of this issue.   In *Gibbs*, the plaintiff filed a lawsuit alleging, *inter alia*, that she was fraudulently induced into signing a contract for purchase of a timeshare interest from Capital.  *Id*. at *2.   The contract contained an identical "mandatory arbitration" section, which was reproduced in its entirety in that opinion, as is found in the instant contracts signed by the Altoms.  *See id*. at *6.  The *Gibbs* Court determined that although it was "less than a model of clarity," the provision described in the above paragraph would be treated as a delegation clause, as such clause was defined in *Rent-A-Center*, 561 U.S. 69.  *Id*. at *7.

In *Gibbs*, the plaintiff had specifically challenged the entire mandatory arbitration section, as well as the contract as a whole, on the basis of fraudulent inducement. *Id*. Capital similarly argued in *Gibbs* that the plaintiff had failed to specifically challenge the arbitration delegation clause, such that the trial court erred by denying Capital's motion to compel arbitration pursuant to the holding in *Rent-A-Center*. *See id*. at *5. This Court disagreed, stating:

> Upon an examination of the Contract, both the arbitration agreement and delegation clause are included in paragraph 38 of the Contract. We note upon reviewing the Contract that Defendants essentially have buried the so-called delegation clause within paragraph 38 which is "Mandatory Arbitration." Plaintiff alleged in her amended complaint that Defendants' actions and misrepresentations "induced Plaintiff to enter into the 'Mandatory Arbitration' clause at paragraph 38 of the Contract." Upon a review of the record, we determine that Plaintiff's challenge of paragraph 38 of the Contract, combined with the location of the delegation clause being buried within paragraph 38, is sufficient to challenge not only the mandatory arbitration agreement but also the delegation clause. Plaintiff alleged that misrepresentations by the Defendants induced her to agree to paragraph 38 of the Contract. The delegation clause is contained in and a part of paragraph 38. The very delegation clause itself refers to paragraph 38 as "this clause." Defendants chose to head the entirety of paragraph 38 "Mandatory Arbitration" and cannot now fault Plaintiff for using the terminology and location of the delegation clause chosen by Defendants.

*Id*. at *7.

In a similar fashion, the Altoms have specifically challenged the "arbitration provisions" contained within the contracts in addition to challenging the contracts as a whole. Because the arbitration provisions contained in the Altoms' contracts are identical to the mandatory arbitration provision in *Gibbs*, we determine that the Altoms similarly have sufficiently challenged the arbitration delegation provisions. *See id*. at *7.

As the *Gibbs* Court further explained:

> Defendants cite to the United States Supreme Court case of *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019), for the proposition that delegation clauses are valid and enforceable. That is not in dispute in this appeal. In that opinion, the Court states that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Id*. at 531. The Supreme Court continues that a court must respect that

agreement "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id*. at 529. We, as we must, accept the Court's holding that delegation clauses in a contract are enforceable and the court must respect the party's agreement. However, the Court in that case also pointed out that "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists" and that "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." Although parties to a contract can delegate the authority to determine arbitrability issues to an arbitrator, Plaintiff in the present case has sufficiently challenged the validity of the delegation agreement itself, and according to *Henry Schein, Inc.*, the court is tasked with first determining the validity of the delegation provision of the Contract. If the Court determines that the delegation provision is not valid as challenged by the Plaintiff, the Court then must proceed to determine the validity of the arbitration provision as challenged by Plaintiff.

*Id*. at \*8. The *Gibbs* Court concluded that the trial court had not erred by denying Capital's motion to compel arbitration. *Id.*

In the case at bar, the Altoms have also sufficiently challenged the validity of the arbitration delegation provisions by challenging the validity of the arbitration provisions within which the delegation provisions are contained. *See id*. at \*7. As such, the "court is tasked with first determining the validity of the [arbitration] delegation provision" in the contract. *See id*. at \*8. We therefore conclude that the trial court did not err by denying the Capital Defendants' motion to compel arbitration concerning this issue. *See id.* at \*8.

VI. Arbitrability of Cancellation Provisions

The Capital Defendants argue that although the contracts provide that Tennessee law will govern the Altoms' cancellation rights, the contracts also provide that any disputes concerning the contracts will be subject to mandatory arbitration pursuant to the FAA. Ergo, the Capital Defendants assert that any dispute concerning cancellation would be subject to arbitration. The trial court, however, determined that because the parties, by their contracts, manifested the intent to apply Tennessee law to the Altoms' right of cancellation, the cancellation issue was appropriate for determination by the trial court rather than an arbitrator. We agree with the trial court.

The contracts signed by the Altoms contain the following language:

IF YOU EXECUTE THIS AGREEMENT IN TENNESSEE, YOUR CANCELLATION RIGHTS ARE SUBJECT TO AND PROTECTED BY

- 12 -

TENNESSEE LAW. THE REFERENCES TO THE TEN (10) DAY CANCELLATION PERIOD PURSUANT TO FLORIDA STATUTES, CHAPTER 721, CONTAINED IN THE TEXT OF THE PUBLIC OFFERING STATEMENT ARE NOT APPLICABLE TO YOU, AS THEY ONLY APPLY TO THE CONTRACTS EXECUTED IN THE STATE OF FLORIDA. TENNESSEE LAW PROVIDES YOU WITH THE FOLLOWING CANCELLATION RIGHTS:

**YOU MAY CANCEL A CONTRACT TO PURCHASE A TIME-SHARE INTERVAL WITHIN TEN (10) DAYS FROM THE DATE OF THE CONT[R]ACT, WHERE YOU HAD AN ON-SITE INSPECTION OF THE TIME-SHARE PROJECT BEFORE SIGNING THE CONTRACT, AND IF YOU HAVE NOT MADE SUCH AN INSPECTION, WITHIN FIFTEEN (15) DAYS FROM THE DATE OF THE CONTRACT. IF YOU ELECT TO CANCEL, YOU MAY DO SO BY HAND DELIVERING NOTICE TO SELLER WITHIN THE DESIGNATED PERIOD, OR BY MAILING NOTICE TO SELLER (OR HIS AGENT FOR SERVICE OF PROCESS) BY PREPAID UNITED STATES MAIL POSTMARKED ANYTIME WITHIN THE DESIGNATED PERIOD.**

(Emphasis added.)

By the express terms of the contracts' cancellation provisions, the Altoms' right to cancel was "subject to and protected by Tennessee law." As this Court has previously explained, "Tennessee courts have uniformly held that the law surrounding the arbitrability of claims and the enforcement and interpretation of arbitration clauses [is] substantive in nature." *Mid-S. Maint. Inc. v. Paychex Inc*., No. W2014-02329-COA-R3-CV, 2015 WL 4880855, at *6 (Tenn. Ct. App. Aug. 14, 2015). This Court further explained that "Tennessee state courts considering the arbitrability of certain claims, the very question presented in this appeal, have uniformly applied the substantive law of the FAA to determine the dispute, so long as the parties did not otherwise manifest an intent to be governed by Tennessee law." *Id*. (emphasis added).

In the case at bar, the parties designated in the contracts that the FAA would control questions of arbitrability in general, but they specifically designated that Tennessee law would control questions concerning the Altoms' cancellation rights. It is well settled law that "[w]here uncertainty exists between general and specific provisions [in a contract], the specific provisions will usually qualify the general." *Mark VII Transp. Co., Inc. v. Responsive Trucking, Inc.*, 339 S.W.3d 643, 648 (Tenn. Ct. App. 2009). As such, in the contracts at issue, we conclude that the parties have excluded cancellation issues from the scope of their arbitration agreement. *See Berent v. CMH Homes, Inc.*, 466 S.W.3d 740, 749 (Tenn. 2015) ("[T]he FAA does not require parties to

- 13 -

arbitrate when they have not agreed to do so, nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement."). We accordingly affirm the trial court's determination that the question of contract cancellation was for the trial court, applying Tennessee law, rather than an arbitrator.

## VII.  Waiver

The Altoms contend that the trial court erred by declining to determine that the Capital Defendants had waived their right to compel arbitration.  The Altoms specifically assert that the Capital Defendants have waived their right to compel arbitration by (1) failing to try to "amicably settle the dispute" pursuant to the contracts' requirements and (2) failing to seek to compel arbitration particularly concerning the second contract, which has the higher dollar value.

With regard to the Altoms' waiver arguments, the trial court determined that no waiver of arbitration rights had occurred.  In so holding, the court relied upon a decision from the Sixth Circuit Court of Appeals, *Hurley v. Deutsche Bank Tr. Co. Americas*, 610 F.3d 334, 338 (6th Cir. 2010), instructing that "a party may waive an agreement to arbitrate by engaging in two courses of conduct:  (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) 'delaying its assertion to such an extent that the opposing party incurs actual prejudice.'" (quoting *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003)).[2]  We agree with the trial court that the Capital Defendants have not waived their rights to seek arbitration based on their actions in this matter.

The Altoms posit that the Capital Defendants failed to satisfy a "condition precedent" to arbitration by failing to attempt to "amicably settle" this dispute.  However, as the trial court noted, the Altoms have failed to show how such a failure (assuming, *arguendo*, that the responsibility for such failure can be shown to be totally attributable to the actions of the Capital Defendants)[3] would be akin to taking an action "completely inconsistent with any reliance on an arbitration agreement."  *See Hurley*, 610 F.3d at 338. As the District Court for the Western District of Tennessee has explained:

> Waiver of the right to insist on arbitration may occur in several ways.  Conduct such as filing responsive pleadings while not asserting a right to arbitration, filing a counterclaim, filing pretrial motions, engaging in extensive discovery, use of discovery methods unavailable in arbitration, and litigation of issues on the merits have all been considered by courts to

---

[2] The Altoms have not argued that they suffered prejudice as a result of a delay in assertion of arbitration rights.

[3] As the Capital Defendants point out, the Altoms filed this action in court rather than pursuing mediation or arbitration; it was not filed by the Capital Defendants.

amount to a waiver of the right to arbitration. *See, e.g., National Found. for Cancer Research*, 821 F.2d at 778 (finding that the movant's delay in seeking arbitration, its extensive participation in discovery, its motion for summary judgment, and the resulting prejudice to the opposing party constituted waiver); *U.S. v. Darwin Constr. Co.*, 750 F. Supp. 536, 538-539 (D.D.C. 1990) (finding plaintiff's conduct in filing eight motions with the court, conducting extensive discovery, and filing motion to stay two months before trial date inconsistent with intent to enforce arbitration right). There is no rigid rule as to what constitutes waiver of the right to arbitrate; the issue must be decided based on the circumstances of each particular case. Among factors examined by the courts in determining whether there has been a waiver of the right to arbitrate are: (1) whether the party's actions are inconsistent with the right to arbitrate; (2) the degree of pretrial litigation; (3) the length of delay in invoking an arbitration right and seeking a stay; (4) the proximity to the trial date; (5) whether a defendant seeking arbitration filed a counterclaim without asking for a stay; and (5) the resulting prejudice to the opposing party.

*S. Sys., Inc. v. Torrid Oven Ltd.*, 105 F. Supp. 2d 848, 854, 2000 WL 1048539 (W.D. Tenn. 2000) (other internal citations omitted).

In the action at bar, the Capital Defendants filed a motion to compel arbitration within forty days of the filing of the Altoms' complaint. The Capital Defendants did not file any responsive pleadings, engage in discovery, or take any other actions inconsistent with their asserted arbitration rights. We therefore determine that the Altoms' argument in this regard is unavailing.

The Altoms also posit that the Capital Defendants have waived their right to compel arbitration by failing to specifically reference the Second Contract in their motion. Although it is true that in the motion to compel, the Capital Defendants refer only to the First Contract, they also expressly seek dismissal or stay of the entire action as well as an order compelling the parties to mediation and arbitration. Moreover, in their memorandum in support of the motion, the Capital Defendants noted that "[alt]hough there are two arbitration provisions in the contracts between the parties, the provisions are identical [and] are collectively referred to herein as the 'Arbitration Agreement.'" As the trial court properly noted:

[G]iven that the arbitration provisions [in both contracts] appear to be identical, and the plaintiffs have made no argument to the contrary, it would be a redundancy to require the defendants to refile and argue the same motion twice. . . . [T]he presence of the arbitration provision and the delegation clause contained therein was called to the attention of the plaintiffs and to the attention of the Court. Both purchase agreements have

- 15 -

been part of the record before the Court as a part of the Amended Complaint.

Based on these circumstances, we agree with the trial court's determination that no waiver occurred. All parties were aware of the existence of two contracts containing identical arbitration provisions, and the Capital Defendants made clear that they were seeking dismissal or stay of the Altoms' entire lawsuit based on the arbitration provisions. We conclude that the Altoms have failed to show that the Capital Defendants have taken an action "completely inconsistent with any reliance on an arbitration agreement." *See Hurley*, 610 F.3d at 338. We therefore determine this issue to be without merit.

## VIII. Conclusion

For the foregoing reasons, we affirm the trial court's judgment. Costs on appeal are assessed to the appellants, Capital Resorts Group, LLC, and CRG Development, LLC. This case is remanded to the trial court for further proceedings consistent with this opinion.

_____
THOMAS R. FRIERSON, II, JUDGE